925 A.2d 131

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Thomas DILLON, Appellant.**

Supreme Court of Pennsylvania.

Argued March 1, 2006.

Decided June 26, 2007.

Owen W. Larrabee, Esq., Karl Baker, Esq., Defender Association of Philadelphia, Philadelphia, for Thomas Dillon.

Hugh J. Burns, Jr., Esq., Philadelphia District Attorney's Office, for Commonwealth of Pennsylvania.

Stuart B. Suss, Esq., Amy Zapp, Esq., Office of the Attorney General, for Attorney General of Pennsylvania.

BEFORE: CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## *OPINION*

Justice CASTILLE.

Appellant Thomas Dillon appeals from the Superior Court's order reversing the trial court's denial of the Commonwealth's motion *in limine*. The motion *in limine* sought permission to introduce evidence in the Commonwealth's case-in-chief to explain the delayed report of sexual abuse made by the child-victim, L.P. This Court granted review to address whether Rule 404(b) of the Pennsylvania Rules of Evidence prohibits the Commonwealth from introducing such evidence in its case-in-chief-specifically, here, evidence that appellant physically abused L.P.'s mother and brother which was proffered to explain L.P.'s lengthy delay in reporting appellant's actions to authorities. For the reasons that follow, we affirm the judgment of the Superior Court.

In 1995, appellant began living with L.P.'s mother, Danielle Herron. L.P., then age nine, and her brother, K., age eight, also lived in the home. Appellant stands accused of sexually abusing L.P. continuously for nearly four years between 1995 and 1998, while also subjecting Ms. Herron and K. to regular physical abuse. During one incident, in 1998, appellant broke K.'s leg. Appellant claimed that K. was injured as the two were wrestling, but K. told L.P. during his hospitalization for his broken leg that appellant had intentionally injured him. K. waited to reveal this information to his mother until the

family had moved away from appellant. Thereafter, appellant was arrested, prosecuted, and convicted of aggravated assault [1] arising from this incident.

In May of 2001, while appellant was incarcerated for the assault conviction, L.P. first reported that appellant had sexually abused her. On June 22, 2001, appellant was arrested and charged with involuntary deviate sexual intercourse,[2] indecent assault,[3] false imprisonment,[4] corruption of minors,[5] statutory sexual assault,[6] sexual assault,[7] unlawful restraint,[8] simple assault,[9] recklessly endangering another person,[10] and endangering the welfare of children.[11] At appellant's June 29, 2001 preliminary hearing, L.P. testified that appellant sexually abused her almost daily from 1995 to 1998, from the time she was the age of nine to the age of twelve. On April 15, 2002, the Commonwealth filed a pre-trial motion *in limine* seeking to introduce evidence of appellant's physical abuse of L.P.'s family, including his aggravated assault conviction, during the Commonwealth's case-in-chief. The Commonwealth claimed in the motion that the evidence was relevant and necessary to explain L.P.'s failure to promptly report the sexual abuse, as appellant's physical abuse of L.P.'s family made her fearful of retaliation. Commonwealth's Motion at 3. Additionally, the Commonwealth asserted that the evidence established that the sexual abuse was committed through forcible compulsion, or threat thereof, and that it also provided proof of the nature of the relationship between the parties. *Id.*

1. 18 Pa.C.S. § 2702.
2. 18 Pa.C.S. § 3123.
3. 18 Pa.C.S. § 3126.
4. 18 Pa.C.S. § 2903.
5. 18 Pa.C.S. § 6301.
6. 18 Pa.C.S. § 3122.1.
7. 18 Pa.C.S. § 3124.1.
8. 18 Pa.C.S. § 2902.
9. 18 Pa.C.S. § 2701.
10. 18 Pa.C.S. § 2705.
11. 18 Pa.C.S. § 4304.

On April 19, 2002, the trial court issued an order and opinion regarding the Commonwealth's motion. The trial court ruled that the Commonwealth could introduce evidence of appellant's physical assaults against L.P., but not evidence of his physical abuse of L.P.'s mother and brother unless appellant first attempted to refute L.P.'s allegations of sexual abuse by arguing her lack of prompt complaint. The trial court realized that the evidence concerning L.P.'s family could be relevant to establish that appellant forced L.P. into participating in the alleged sexual assaults. But the trial court noted, force was not an element of any of the charged offenses because L.P. was a minor when the offenses occurred. Consequently, the trial court determined that evidence of appellant's abuse of L.P.'s family was inadmissible unless and until the defense argued the lack of prompt complaint. The Commonwealth then appealed to the Superior Court, certifying that the trial court's exclusionary order terminated or substantially handicapped the prosecution in accordance with Rule 311(d) of the Pennsylvania Rules of Appellate Procedure.[12]

Initially, a three-judge panel of the Superior Court affirmed the trial court, agreeing that the introduction of the disputed evidence during the Commonwealth's case-in-chief could possibly be more prejudicial than probative, but that decision was later withdrawn upon grant of the Commonwealth's petition for reargument *en banc*. Writing for a unanimous court following reargument, the Honorable Seamus McCaffery began by acknowledging that the Commonwealth's appeal was reviewable under Rule 311(d). *Commonwealth v. Dillon*, 863 A.2d 597, 600 (Pa.Super.2004).[13] The court then proceeded to

---

**12.** Appellate Rule 311(d) provides:

**Commonwealth appeals in criminal cases.** In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.

Pa.R.A.P. 311(d). The parties make no argument regarding the Commonwealth's right to appeal the issue presently before this Court.

**13.** Judge McCaffery was joined by then-President Judge Del Sole, as well as Judges Ford Elliott (the current President Judge), Stevens, Orie Melvin, Lally–Green, Todd, Gantman, and Panella.

review the merits of the Commonwealth's claim, acknowledging the difficulties in prosecuting sexual assault cases, such as the lack of corroborating witnesses to the crime and the jury's frequent need to rest its decision solely on a determination of the relative credibility of the victim and the defendant. Courts of this Commonwealth, the panel noted, permit evidence of a victim's prompt complaint to be offered as substantive evidence for the prosecution, just as the defense is permitted to introduce evidence of a victim's lack of prompt complaint in order to cast doubt upon the accusation. Contrary to the trial court, the Superior Court panel interpreted *Commonwealth v. Barger*, 743 A.2d 477 (Pa.Super.1999) (*en banc* ), as expressly allowing the Commonwealth's introduction of evidence during its case-in-chief of a defendant's physical abuse against a minor sexual assault victim and her family. *Barger*, according to the panel, authorizes the presentation of evidence of prior physical abuse and intimidation to provide the jury the benefit of the full *res gestae*[14] of the crime and to ensure that the accused cannot "profit from terrorizing his victim into silence." *Dillon*, 863 A.2d at 603. The Superior Court found the trial court's ruling in this case antithetical to *Barger's* precepts. Moreover, the court reasoned that the trial court's ruling would lead to an illogical result, namely, allowing the accused to control whether the jury could hear evidence as to why an intimidated victim of sexual abuse did not promptly report her abuse. *Id.* at 603–04. Accordingly, the Superior Court ruled that the trial court had abused its discretion in denying the Commonwealth's motion *in limine*, and it therefore vacated the trial court's order and remanded the case for trial. Upon appellant's petition for allowance of appeal, this Court granted further pre-trial review.

Appellant claims that the trial court's decision to conditionally exclude evidence of his alleged prior bad acts against the victim's family, unless and until made an issue by defense argument, was well within the trial court's discretion. Appel-

---

**14.** *Res gestae,* which in Latin means "things done," is defined as: "The events at issue, or other events contemporaneous with them." BLACK's LAW DICTIONARY 1335 (8th ed.2004).

lant argues that the trial court's reading of the *Barger* case was a correct interpretation because defense counsel in *Barger* made the evidence of prior physical abuse relevant by casting doubt on the allegations given the victim's failure to make a prompt complaint. The evidence that the Commonwealth seeks to admit, appellant adds, does not fall under any specific exception to Evidence Rule 404(b). Moreover, appellant maintains that the Commonwealth failed to establish that the evidence was more probative than prejudicial. Regarding the specific evidence of K.'s broken leg, appellant asserts that the incident only marginally helps to show why L.P. failed to report the alleged abuse by appellant, because the incident occurred during the last four months of the alleged four-year period of sexual abuse. Because his breaking K.'s leg offers little support for the instant charges, appellant argues, the evidence of prior assaults would contribute to the jury's willingness to believe that appellant sexually abused L.P. as a matter of criminal propensity or bad character, outweighing any marginal probative value of the evidence. Finally, appellant stresses that the trial court did not completely foreclose admission of prior physical abuse; rather, it prudently decided to wait until it heard the defense presentation at trial before it ultimately would determine if the evidence could be introduced.

The Commonwealth responds that L.P.'s lengthy and unexplained failure to report the alleged abuse "inevitably" raises a negative inference as to her credibility. Therefore, the Commonwealth argues that it should be permitted to rebut that natural inference in its case-in-chief. The Commonwealth submits that the law recognizes the relevance of such evidence, since it permits the introduction of other crimes evidence if introduced for some relevant purpose other than to show bad character or a defendant's criminal propensity. Here, the evidence was proffered to show how appellant coerced L.P.'s silence and delayed her report. Excluding an explanation for the delayed abuse report, contends the Commonwealth, is tantamount to blocking the Commonwealth from affirmatively discharging its burden of proof because the

integrity of the trial is undermined by the misleading suggestion created by a child victim's unexplained delay in reporting.

The Commonwealth also argues "strong policy reasons" for permitting evidence of other crimes to explain a failure to timely report a sex crime. The Commonwealth echoes the Superior Court's concern that preventing the admission of prior physical abuse of family members will allow sexual abusers to intimidate their victims into silence. Furthermore, the absence of evidence to explain a delayed report creates a "false impression" on the jury which serves to undermine the jury's assessment of a victim's sincerity, which in turn undermines the integrity of the trial.

The Commonwealth also emphasizes the teachings of *Commonwealth v. Minerd*, 562 Pa. 46, 753 A.2d 225 (2000), where this Court permitted the Commonwealth to introduce evidence that an absence of signs of physical harm does not disprove rape. In *Minerd*, this Court reasoned that a jury might expect to see physical evidence of an assault presented at trial, in the absence of which the jury is likely to raise doubt as to the victim's accusations and punish the Commonwealth for failing to present such evidence. The circumstance here is similar, the Commonwealth argues, as the jury will inevitably doubt L.P.'s testimony because of the simple historical fact of the length of time she waited to report appellant's abuse. Because the trial court failed to appreciate the relevance of the physical abuse evidence to the Commonwealth's ultimate burden, the Commonwealth alleges, it could not and did not conduct a proper balancing test. Simply stating that the evidence may possibly be more prejudicial than probative does not constitute a proper weighing of the evidence, the Commonwealth notes; the prejudice must be undue to warrant its exclusion.

Thomas W. Corbett, Jr., the Attorney General of Pennsylvania, has filed an *amicus curiae* brief in support of the Commonwealth. The Attorney General argues that it is vital in cases such as the one *sub judice* to permit evidence of the accused's physical abuse of the child victim's family to explain the delayed report of sexual abuse. No decision of this Court,

according to the Attorney General, has ever conditioned the admissibility of such evidence on a defendant having "opened the door" to its admission. Evidence explaining a delayed report of sexual abuse should be treated identically to, for instance, evidence of motive, which, the Attorney General notes, is admissible even though motive is not an element of the charged crime.

Appellate courts typically examine a trial court's decision concerning the admissibility of evidence for abuse of discretion. *See Commonwealth v. Dengler*, 586 Pa. 54, 890 A.2d 372, 379 (2005). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Grady v. Frito–Lay, Inc.*, 576 Pa. 546, 839 A.2d 1038, 1046 (2003). Typically, all relevant evidence, *i.e.*, evidence which tends to make the existence or non-existence of a material fact more or less probable, is admissible, subject to the prejudice/probative value weighing which attends all decisions upon admissibility. *See* Pa.R.E. 401; Pa.R.E. 402; *see also Commonwealth v. Malloy*, 579 Pa. 425, 856 A.2d 767, 775 (2004).

A long-accepted exception to this general rule of admissibility, which is reflected in Rule 404(b)(1) of the Pennsylvania Rules of Evidence, states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Character evidence (whether good or bad) is, of course, **relevant** in criminal prosecutions; that is why an accused has the right to introduce evidence of good character for relevant character traits. *See* Pa.R.E. 404(a)(1). Evidence of separate or unrelated "crimes, wrongs, or acts," however, has long been deemed inadmissible as character evidence against a criminal defendant in this Commonwealth as a matter not of relevance, but of policy, *i.e.*, because of a fear that such evidence is so powerful that the jury might misuse the evidence and convict based solely upon criminal

propensity. *See Commonwealth v. Ulatoski*, 472 Pa. 53, 371 A.2d 186, 191 n. 11 (1977). Because the fear against which this exception to the general rule of relevance/admissibility is aimed concerns use of prior crimes to show bad character/propensity, a series of "exceptions to the exception" (to the rule of relevance) have been recognized. Thus, as Rule 404(b)(2) reflects, evidence of "other crimes, wrongs, or acts" may be admitted when relevant for a purpose other than criminal character/propensity, including: proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. *See, e.g., Commonwealth v. Chmiel*, 585 Pa. 547, 889 A.2d 501, 534 (2005); *Malloy*, 856 A.2d at 775. This list is not exhaustive. Pa.R.E. 404(b) cmt. For instance, this Court has recognized a *res gestae* exception to Rule 404(b) which allows admission of other crimes evidence when relevant to furnish the context or complete story of the events surrounding a crime. *Commonwealth v. Williams*, 586 Pa. 553, 896 A.2d 523, 539 (2006); *Commonwealth v. Paddy*, 569 Pa. 47, 800 A.2d 294, 307–08 (2002); *see also Commonwealth v. Lark*, 518 Pa. 290, 543 A.2d 491, 497 (1988) (evidence of other crimes may be relevant and admissible to show "part of the chain or sequence of events which became part of the history of the case and formed part of the natural development of the facts").

A jury may consider evidence of a lack of prompt complaint in cases involving sexual offenses pursuant to 18 Pa.C.S. § 3105, which provides:

> Prompt reporting to public authority is not required in a prosecution under this chapter: Provided, however, That nothing in this section shall be construed to prohibit a defendant from introducing evidence of the complainant's failure to promptly report the crime if such evidence would be admissible pursuant to the rules of evidence.

*Id.* Section 3105 codified a common law principle recognizing that the victim of a sexual assault naturally would be expected to complain of the assault at the first safe opportunity. *Commonwealth v. Snoke*, 525 Pa. 295, 580 A.2d 295, 300 (1990) (citing *Commonwealth v. Allen*, 135 Pa. 483, 19 A. 957 (1890)

and *Commonwealth v. Lane*, 521 Pa. 390, 555 A.2d 1246 (1989)). Generally, there are three principles upon which evidence addressing the timeliness of a sexual assault complaint has been deemed relevant and admissible: (1) as an explanation of an inconsistency/silence; (2) as corroboration of similar statements; or (3) as a *res gestae* declaration. 4 WIGMORE ON EVIDENCE § 1134 (Chadbourn rev.1972).

In *Commonwealth v. Lane*, this Court elaborated on the relevance and potential importance of a lack of prompt complaint in evaluating a sexual assault victim's credibility. 555 A.2d at 1250–51; *see also Snoke*, 580 A.2d at 297. *Lane* involved the defendant's conviction for, *inter alia*, the rape of an eight-year-old girl. On appeal, this Court examined the propriety of the trial court's decision to grant a Commonwealth challenge for cause concerning a prospective juror, who had expressed concern during *voir dire* that he would have difficulty ignoring the length of time that elapsed between the alleged rape and when it was reported. 555 A.2d at 1248. This Court affirmed the Superior Court's ruling that the juror's dismissal was in error, in part, because the juror had a legitimate question about a potential weakness in the Commonwealth's case. *Id.* at 1249. In reaching this conclusion, the Court noted that evidence concerning the timeliness of a complaint is contemplated both by statute (Section 3105 of the Crimes Code) and by the principle recognizing that a witness may be impeached if he or she remained silent on an occasion where it would have been natural to have spoken. *See Lane*, 555 A.2d at 1250 (citing CHARLES E. TORCIA, WHARTON'S CRIMINAL EVIDENCE § 436 (14th ed.1986)). Because questions of the complainant's sincerity are raised if it is established that the delay in reporting was "either unreasonable or unexplained," the *Lane* Court observed, an "inference of insincerity is only justified where the facts of the case fail to disclose a reasonable explanation for the challenged time lapse prior to the complaint." *Lane*, 555 A.2d at 1250. Although a lack of prompt complaint should not be dispositive of the merits of a case, the Court stated, a delayed report may produce justifiable doubts concerning the truth of the complaint. A com-

plainant, for instance, may have delayed a report to protect a guilty third-party; to exact revenge against the accused; or to acknowledge the offensiveness of an encounter. *Id.* at 1250–51. Furthermore, in cases where the victim is a child, this Court commented on the importance of questioning whether "the immaturity of the child occasioned the delay as opposed to a design to deceive." *Id.* at 1251.

Also instructive is *Commonwealth v. Minerd,* 753 A.2d at 225. In *Minerd,* the defendant was charged with sexually abusing his stepdaughters several years after the sexual abuse itself occurred, and the question addressed was whether the Commonwealth may, in its case-in-chief in a sexual assault prosecution, offer the testimony of an expert that the absence of physical trauma is nevertheless consistent with the sexual abuse that was alleged. This Court, in a unanimous opinion by Mr. Justice (now Chief Justice) Cappy,[15] began its analysis by noting that the Commonwealth has the burden of proving every element of the offense beyond a reasonable doubt, while the task of the jury, as factfinders, is to evaluate the evidence and then render a decision based on that evidence and the inferences naturally deduced from it. *Id.* at 231. We recognized that jurors may draw negative inferences on their own from the fact that the victims had no signs of physical trauma after they made their complaints. For this reason we held that it was permissible for the Commonwealth to introduce, in its case-in-chief, medical expert testimony to explain that the absence of physical trauma is not inconsistent with allegations of sexual abuse because there was adequate time for any trauma to heal. *Id.* We expressly noted that limiting the expert testimony to rebuttal would be in error because the defense might not introduce the examination result, which would deprive the Commonwealth of the opportunity to refute negative inferences that the jury would likely develop from the absence of such evidence. Moreover, we noted, the admission of such testimony on direct "will not confuse or prejudice the jury any more than if it is introduced on rebuttal, since in both

15. Mr. Justice Nigro's concurring opinion joined the majority opinion.

cases, the defense will have the opportunity to cross-examine."
*Id.*

In sum, both the common law experience and the judgment of the General Assembly have led to a recognition of the relevance of the promptness of a complaint of sexual abuse, and this Court has separately recognized the reality that a sexual assault prosecution oftentimes depends predominately on the victim's credibility, which is obviously affected by any delay in reporting the abuse. *See Lane,* 555 A.2d at 1250. Revealing the circumstances surrounding an incident of sexual abuse, and the reasons for the delay, enables the factfinder to more accurately assess the victim's credibility. *See id.* Moreover, this Court has acknowledged that juries in sexual assault cases expect to hear certain kinds of evidence and, without any reference to such evidence during the trial, a jury is likely to unfairly penalize the Commonwealth, the party with the burden of proof. *See Minerd,* 753 A.2d at 231 (citing Stephen A. Saltzburg, *A Special Aspect of Relevance: Countering Negative Inferences Associated with the Absence of Evidence,* 66 CAL. L.REV. 1011 (1978)).

■ Turning to the case *sub judice,* there is no doubt that evidence of appellant's physical abuse of L.P.'s mother and brother was relevant for purposes other than to show his bad character and criminal propensity. First, the evidence was probative of the reasons for L.P.'s significant delay in reporting the alleged sexual assaults—*i.e.,* the evidence tends to show that her experiences with appellant, including those assaults on family members, caused her to fear making a prompt report. The evidence was also relevant for *res gestae* purposes, *i.e.,* to explain the events surrounding the sexual assaults, and resulting prosecution so that the case presented to the jury did not appear in a vacuum.[16] Indeed, multiple

16. The Superior Court's decision that the evidence at issue here was relevant relied heavily on *Commonwealth v. Barger,* 743 A.2d at 477. In *Barger,* a unanimous *en banc* panel of the Superior Court upheld a trial court's order allowing the Commonwealth to introduce evidence of the defendant's physical abuse committed against the mother of the child-victim. The *Barger* panel first noted this Court's elaboration in *Lane* concerning the relevance of the lack of a prompt complaint as a factor

courts have recognized the importance of allowing the prosecution to fully explain incidents of physical abuse causing a complaint of sexual abuse to be delayed. *See United States v. Powers*, 59 F.3d 1460, 1464 (4th Cir.1995); *People v. Brown*, 8 Cal.4th 746, 35 Cal.Rptr.2d 407, 883 P.2d 949, 958–59 (1994); *State v. Hitt*, 207 Neb. 746, 301 N.W.2d 96 (1981); *see also People v. Chase*, 277 A.D.2d 1045, 716 N.Y.S.2d 486 (N.Y.App. Div.2000); *Commonwealth v. McKinnon*, 35 Mass.App.Ct. 398, 620 N.E.2d 792, 796 (1993).

Appellant's physical abuse of L.P.'s mother and brother, and the atmosphere and effect upon L.P. which were a necessary byproduct of that abuse, are particularly relevant given both the lengthy period of alleged sexual abuse and the long delay in reporting the abuse. L.P. alleged that she was abused for nearly four years, but apparently never told anyone. Even after the abuse stopped in 1998 and appellant left the house after breaking K.'s leg, L.P. waited until 2001 to report the abuse. We are aware that appellant objects to any evidence relating to K.'s broken leg on the basis that it occurred in the last four months of the four-year period during which appellant allegedly sexually abused L.P. However, this objection overlooks the relevance this incident has as a potential explanation of why L.P. waited several years after the sexual abuse ended to report it. Furthermore, the character of the incident with L.P.'s brother underscores the severity of the physical assaults L.P. feared that she would be subjected to if she reported appellant to the authorities.

in evaluating a victim's credibility. *Id.* at 480. Regarding the physical abuse exacted against the victim's mother, as well as the victim herself, the panel found that the defendant created an environment that "facilitated the repeated indecent assaults by intimidating the victim into silence." *Id.* at 481. Through the defendant's abuse, the victim was compelled to participate in the assaults and, therefore, the panel held, evidence of any physical abuse the defendant committed against the victim and her mother was admissible.

Appellant notes that *Barger* does not support the Superior Court's decision in the case *sub judice* because the defendant in *Barger* specifically made his physical abuse of family members relevant by challenging the victim's credibility during cross-examination based on her delayed report of sexual abuse. Appellant's point is well-taken: *Barger* is indeed distinguishable on such grounds.

Beyond the basic relevance of the evidence to explain a lack of prompt complaint, of course, is the question of the place of the evidence at trial. Appellant argues that evidence of other acts of physical abuse by the defendant should only be permitted if and when the defendant specifically challenges the timing of the victim's complaint—*i.e.*, only on rebuttal. But any such broad proscription fails to account for the teaching of *Minerd.* Certain points need not be specifically made to jurors by the advocates in order for them to be on the minds of the jurors. The usefulness of an absence of prompt complaint as a defense point is that it resonates with our understanding of human behavior to suggest that an unexplained failure to complain raises suspicion about the validity of the complaint. Most jurors are not intimately familiar with evidentiary rules and, thus, are capable of drawing incorrect inferences and conclusions from the absence of evidence. *See Minerd,* 753 A.2d at 231.

In the vast majority of cases, the defense would make affirmative use of the lack of a prompt complaint, the only real disincentive to that strategy being a circumstance, such as this one, where the Commonwealth believes it can explain the delay by pointing to other instances of the defendant's behavior. Whether the delay can legitimately be explained or not, it is a matter the jury may notice and speculate about. The necessity for the party with the burden of proof to address that speculation cannot be a function of whether the defense decides to pursue it affirmatively. To allow the natural inference to go unrebutted can mislead the jury. Moreover, if the Commonwealth were forced in all instances to introduce the explanation for the delay only in response to the defense litigation strategy, the Commonwealth's rebuttal may appear unpersuasive precisely because of its timing: *i.e.*, it may seem to be an attempt to save a flawed presentation of its case-in-chief, or, at worst, a fabrication to save the victim's credibility after defense counsel's emphasis on a legitimate pitfall in the victim's version of the facts. It would be error for this Court to adopt a rule which allows for ignoring the jury's capacity to make common sense deductions and inferences when they

would lead to erroneous conclusions, particularly when this Court may easily fashion a rule to prevent incorrect assumptions in sexual abuse cases that turn heavily, if not solely, on the credibility of one individual's accusations.

In light of the authority described above, and particularly *Minerd*, we believe the trial court clearly abused its discretion in determining that, to the extent the evidence of appellant's physical assaults against L.P.'s family were proffered to explain the delay in her making a complaint, they were inadmissible except in rebuttal. Such evidence is directly relevant to explain a legitimate credibility question necessarily raised by the facts of the case—to wit, why L.P. waited to report the abuse—and, therefore, counteract the possibility that a juror would develop "untutored assumptions" and rely upon them in rendering a verdict. *Minerd*, 753 A.2d at 231. Admittedly, consigning the instant evidence to rebuttal, as the trial court did, is not the appropriate solution in a case where a child-victim waited years to report abuse after it occurred, for the defense may not trigger its admission as rebuttal and, thereby, block the Commonwealth from addressing the jurors' likely negative inference arising from the particularly long reporting delay in this case. *See id.*

Finding that the evidence is relevant to the Commonwealth's case-in-chief does not end the inquiry. In instances where evidence of other crimes, wrongs, or acts is offered for a purpose other than to show conformity of action, such evidence may still be excluded if the probative value of the evidence is outweighed by its potential for prejudice. Pa.R.E. 404(b)(3). The probative value of the evidence might be outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, pointlessness of presentation, or unnecessary presentation of cumulative evidence. Pa.R.E. 403. The comment to Pa.R.E. 403 instructs that: " 'Unfair prejudice' means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403 cmt. Additionally, when weighing the potential for prejudice, a trial court may consider how a cautionary jury

instruction might ameliorate the prejudicial effect of the proffered evidence. Pa.R.E. 404(b) cmt.

Evidence will not be prohibited merely because it is harmful to the defendant. This Court has stated that it is not "required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." *Lark*, 543 A.2d at 501. Moreover, we have upheld the admission of other crimes evidence, when relevant, even where the details of the other crime were extremely grotesque and highly prejudicial. *See Commonwealth v. Billa*, 521 Pa. 168, 555 A.2d 835, 841 (1989) (upholding the trial court's admission of evidence that the defendant had committed a prior rape, including testimony from the prior rape victim); *see also Commonwealth v. Gordon*, 543 Pa. 513, 673 A.2d 866, 870 (1996) (allowing evidence of defendant's previous sexual assaults).

Because the trial judge did not recognize the relevance of the evidence here to the Commonwealth's case-in-chief, the court did not engage in a proper weighing of the probative value of the evidence versus its potential unfair prejudicial effect. In a proper balancing inquiry, of course, the court should also consider the scope and contour of the proffered evidence, to minimize its potential for unfair prejudice. We stress this point because it is important to recognize that, although the court erred in deeming the evidence irrelevant except as rebuttal, our finding of error in that regard does not mean that upon remand, the court is obliged to allow unlimited evidence along these lines. The trial court rather retains its discretionary power to determine the proper effect of evidence that may be introduced to support the point the Commonwealth pursues. It may be that, in the court's judgment, not every incident that is proffered needs to be recounted for the jury to understand that L.P. allegedly feared appellant and the general severity of the violence causing that fear. There may certainly be a point at which the quantity and quality of evidence regarding L.P.'s fear of physical abuse may become

more unfairly prejudicial than probative, and the trial court may avoid crossing that boundary by carefully tailoring how and to what degree evidence of the reasons for L.P.'s delayed report is introduced at trial, and via appropriate limiting instructions. The point of our ruling today is that the trial court failed to comprehend the relevance of the disputed evidence, and in doing so erroneously limited presentation of it to rebuttal, and thereby failed to undertake a proper balancing. Following our direction that the evidence at issue is relevant and admissible in the Commonwealth's case-in-chief, it is for the trial court to manage the Commonwealth's presentation of the evidence establishing the reasons for the timing of L.P.'s report.

For the foregoing reasons, we affirm.

Former Justice NEWMAN did not participate in the decision of this case.

Justice SAYLOR, EAKIN and BAER join the opinion.

Chief Justice CAPPY files a concurring opinion.

Justice BALDWIN files a dissenting opinion.

Chief Justice CAPPY *concurring*.

I join the majority in its entirety. I write to emphasize that while our holding allows the Commonwealth to introduce evidence in its case-in-chief to explain a lack of prompt complaint, this rule is limited to sexual assault cases. In this type of case the judiciary can rightly take note of the fact that the jury may make a natural inference against the credibility of a witness for a failure to report promptly consistent with the policy that underlies the legislation at 18 Pa.C.S. § 3105. Section 3105 instructs that a prompt complaint is not required for the prosecution of sexual offenses. This reflects the Legislature's response to the common law assumption of "hue and cry" which presupposes that a victim of sexual assault will immediately cry out, and if he or she does not, a negative inference can be drawn against the credibility of the complaint and against whether or not the incident in fact occurred.

*Commonwealth v. Snoke,* 525 Pa. 295, 580 A.2d 295, 300 (1990) (quoting the anachronistic adage "hue and cry follow rape like smoke follows fire").

Justice BALDWIN *dissenting.*

In this case implicating 18 Pa.C.S. § 3105, I believe that the prejudicial effect of the contested evidence outweighs its probative value when presented in the Commonwealth's case-in-chief. For reasons explained in greater detail below, I respectfully dissent.

Appellant is charged with a multitude of sexual offenses stemming from the alleged sexual assault of his girlfriend Danielle Herron's daughter, L.P. *See* Majority Op. at 133, n. 2–11. It is alleged that Appellant sexually abused L.P. for a period of almost four years, beginning in 1995 when L.P. was nine years old and ending in 1998. During this period, Appellant also physically assaulted both Ms. Herron and K., L.P.'s eight year old brother. In fact, Appellant was convicted of aggravated assault [1] following one such attack on K. which resulted in K.'s leg being broken. It was not until 2001, when Appellant was incarcerated on the aggravated assault charge, that L.P. revealed that Appellant had continually sexually assaulted her.

Prior to trial on the sexual assault charges, the Commonwealth filed a pre-trial motion *in limine* seeking to introduce evidence of the physical abuse of Herron and K. during the Commonwealth's case-in-chief. The Commonwealth sought introduction of this evidence to demonstrate to the jury that L.P. failed to promptly report the sexual abuse out of fear that if she reported the abuse, she too would be subjected to the same physical abuse inflicted upon her family. The trial court denied the motion and ruled that the evidence was inadmissible until Appellant challenged the lengthy delay in reporting the abuse. The Superior Court, in a published *en banc* decision, reversed. *Commonwealth v. Dillon,* 863 A.2d 597 (Pa.Super.2004).

1.  18 Pa.C.S. § 2702.

We granted allocatur to determine "whether Rule 404(b) of the Pennsylvania Rules of Evidence prohibits the Commonwealth from introducing such evidence in its case-in-chief—specifically, here, evidence that Appellant physically abused L.P.'s mother and brother which was proffered to explain L.P.'s lengthy delay in reporting Appellant's actions to authorities." Majority Op. at 353, 925 A.2d at 133. The majority, relying on this Court's decision in *Commonwealth v. Minerd*, 562 Pa. 46, 753 A.2d 225 (2000), holds that the challenged evidence is admissible in the Commonwealth's case-in-chief under Pa.R.E. 404(b)(2). In doing so, the majority overstates the probative value of such evidence. I disagree and reach the opposite conclusion. The introduction of evidence concerning the physical abuse of L.P.'s mother and brother *prior* to the defense attacking the victim's delay in reporting results in the prejudicial impact of this evidence outweighing its probative value.

"Admissibility of evidence is a matter addressed to the sound discretion of the trial court and an appellate court may only reverse rulings on admissibility upon a showing that the lower court abused its discretion." *Commonwealth v. Billa*, 521 Pa. 168, 177–78, 555 A.2d 835, 840 (1989) (citing *Commonwealth v. Claypool*, 508 Pa. 198, 202, 495 A.2d 176, 178 (1985)). "Evidence of a defendant's distinct crimes are [sic] not *generally* admissible against a defendant *solely* to show his bad character or his propensity for committing criminal acts, as proof of the commission of one offense is not *generally* proof of the commission of another." *Billa*, 521 Pa. at 177, 555 A.2d at 840 (emphasis in original) (citing *Commonwealth v. Lark*, 518 Pa. 290, 543 A.2d 491, 497 (1988)). This concept is similarly reflected in Pennsylvania Rule of Evidence 404(b)(1), which states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of the person in order to show action in conformity therewith." As the majority aptly points out, evidence of other crimes or bad acts is relevant, but generally proscribed as a matter of policy because the potential for misuse by the jury due to the inflammatory nature of this type of evidence is too great. *See* Majority Op. at 359, 925 A.2d at 136. Nonetheless, there are

exceptions to this rule which are specifically aimed at allowing the evidence to be used for purposes other than showing criminal propensity. Although not exhaustive, Pa.R.E. 404(b)(2) provides exceptions to the general rule where the evidence is offered to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. *See* Majority Op. at 359–60, 925 A.2d at 136–37.

Here, the majority finds that evidence of physical abuse upon Herron and K. was relevant for purposes other than criminal propensity. Specifically, the majority finds that the evidence was probative in that it explained L.P.'s "significant delay" in reporting the alleged sexual abuse. *See* Majority Op. at 363, 925 A.2d at 139. The majority also finds the evidence relevant for *res gestae* purposes. *Id.* ("The evidence was also relevant for *res gestae* purposes, i.e., to explain the events surrounding the sexual assaults, and resulting prosecution so that the case presented to the jury did not appear in a vacuum."). On these specific findings, I agree with the majority. However, for Rule 404(b) purposes, finding that the proffered evidence is relevant for purposes other than criminal propensity does not end the inquiry. Such evidence is admissible "only upon a showing that the probative value of the evidence outweighs its potential for prejudice." Pa.R.E. 404(b)(3). It is at this juncture that I must depart from the majority.

As we stated in *Billa* regarding the balancing test in Rule 404(b), "[a]s with any evidentiary ruling, the trial court should balance the relevancy and evidentiary *need* for the evidence of distinct crimes against the potential for undue prejudice." *Billa,* 521 Pa. at 178, 555 A.2d at 840 (emphasis added) (citing *Lark,* 518 Pa. at 310, 543 A.2d at 501). Upon a close inspection, the *need* for the proffered evidence in the Commonwealth's case-in-chief is minimal. Therefore, its probative value is outweighed by the evident prejudicial impact.

In *Minerd,* we were faced with a similar situation to that presented here. In that case, Timothy Minerd was charged with sexually assaulting the two young daughters of the woman with whom he was living. V.M., who was twenty years old at the time of trial, testified that Minerd began molesting her in the early 1980s when she was three and one-half or four

years old. *Id.* at 50, 753 A.2d at 227. Similarly, J.M., V.M.'s younger sister, testified that Minerd began molesting her when she was six years old. *Id.* at 51, 753 A.2d at 228. In 1989, after V.M. learned about AIDS in school and fearing that she had acquired the disease from Minerd, V.M. informed her mother of the sexual abuse. J.M. also revealed that she too had been abused by Minerd. *Id.*

Minerd was eventually arrested and brought to trial. At trial, as part of the Commonwealth's case-in-chief, Dr. Margaret Carver, an expert in obstetrics and gynecology, testified that she had examined both V.M. and J.M. and found no evidence of physical trauma to the girls' vaginal or anal areas. She further testified, however, that the lack of physical injury did not prove that an assault never occurred because there was adequate time between the abuse and the examination for the relevant bodily areas to fully heal. *Id.* at 51–52, 753 A.2d at 228. Minerd was eventually convicted of various sexual crimes and sentenced to an aggregate term of imprisonment of seven and one-half to twenty-two years.

We granted allocatur in *Minerd* to consider "whether the Commonwealth may, as part of its case-in-chief in a sexual assault prosecution, offer the testimony of an expert that the absence of physical trauma is nevertheless consistent with the alleged sexual abuse." *Id.* at 50, 753 A.2d at 227. We rejected Minerd's claim that the expert testimony would be proper only on rebuttal and not in the Commonwealth's case-in-chief. Because the victims waited a lengthy period of time before reporting the abuse, there was a lack of physical evidence to aid in proving the crime. Dr. Carver's testimony was relevant to explain the conspicuous absence. Thus, in rejecting Minerd's claim, we explained that without Dr. Carver's testimony, "jurors may improperly draw a negative inference against the Commonwealth, based upon a layperson's untutored assumptions, and rely upon that inference in rendering a verdict." *Id.* at 57, 753 A.2d at 231. We also recognized that juries expect to hear certain kinds of evidence in sexual assault cases, and that the Commonwealth may be unfairly penalized for not meeting the jury's expectations. *Id.*

(citing S.A. Saltzburg, *A Special Aspect of Relevance: Countering Negative Inferences Associated with the Absence of Evidence*, 66 Cal.L.Rev. 1011, 1019). Thus, we held that the Commonwealth was entitled to address this negative inference in its case-in-chief because the defense may choose not to introduce the results of the physical examination showing the lack of physical trauma, thereby depriving the Commonwealth of the opportunity to address the juror's potential negative inferences. In such a case, introduction of the evidence during the Commonwealth's case-in-chief would not prejudice or confuse the jury any more than if it were introduced at rebuttal, particularly because the defense would have the opportunity to cross-examine the expert at either stage. *Id.*

The majority employs the *Minerd* reasoning to find that jurors in a case such as this one will likely draw a negative inference from a sexual assault victim's failure to promptly report the alleged abuse. Addressing this negative inference, according to the majority, cannot be conditioned on the defense first raising the issue. The Court states that "[t]he necessity for the party with the burden of proof to address that speculation cannot be a function of whether the defense decides to pursue it affirmatively. To allow the natural inference to go unrebutted can mislead the jury." Majority Op. at 365, 925 A.2d at 140. As mentioned above, the majority overstates the necessity of addressing this potential negative inference in this case.

In *Minerd*, there was a high likelihood that jurors would be suspicious of the criminal allegations absent an explanation of the lack physical trauma to the victims. There was little doubt that the testimony's probative value out weighed any prejudicial impact, which was minimal at best. Moreover, and particularly pertinent to this discussion, the necessity of Dr. Carver's testimony was clear. Without her testimony, the jury's suspicions and speculations would *never* be addressed.

The instant case differs from *Minerd* in two substantial ways. First, the evidence in question here is of a materially different character than that in *Minerd*. In *Minerd*, the evidence was *expert* testimony regarding the lack of physical trauma, whereas in the instant case the evidence at issue

related to credibility and involved unrelated violent crimes perpetrated on the alleged victim's family. Second, however, is the chief distinction from *Minerd,* which is the applicability of 18 Pa.C.S. § 3105. Section 3105 states, with regard to sexual offenses, that:

Prompt reporting to public authority is *not required* in a prosecution under this chapter: Provided, however, That nothing in this section shall be construed to prohibit a defendant from introducing evidence of the complainant's failure to promptly report the crime if such evidence would be admissible pursuant to the rules of evidence.

18 Pa.C.S. § 3105. (emphasis added).

The statute instructs the courts that the Commonwealth does not have to prove, or explain, anything with regard to the promptness, or lack thereof, in reporting the alleged abuse to the authorities to achieve convictions on the underlying charges. *Commonwealth v. Freeman,* 295 Pa.Super. 467, 441 A.2d 1327, 1331 (1982) ("[T]he fact that a victim made a prompt complaint is no longer required to sustain a rape conviction, See 18 Pa.C.S.A. § 3105.") Pursuant to § 3105, courts should instruct juries that the failure of a victim to promptly complain about sexual abuse or attacks is not to be considered in determining whether the Commonwealth has made its case. As discussed below, this would diffuse concerns about improper inferences drawn by the jury. This, of course, is limited to the situation where a defendant chooses not to attack the victim's credibility based on her delay in reporting the abuse or attack.

The existence of this statute not only refutes the majority's assertion that the challenged evidence here is necessary, but it also eliminates the concern that juries will (1) have and (2) ponder some nebulous "negative inference" that is never addressed unless the defendant raises the issue. If the defendant fails to raise the issue, which, as the majority points out, would be a rare situation, *see* Majority Op. at 367, 925 A.2d at 141, the Commonwealth can inform the jury during closing arguments that it need not consider the lack of a prompt complaint because Pennsylvania law does not require it as an

element of any sexual crimes. More importantly, the Commonwealth can request that a jury instruction be given that tracks the language of Section 3105, and the trial court *should* so instruct them. The result would eradicate any lingering concerns that the jury would have regarding the necessity of an explanation regarding the victim's failure to promptly report the alleged abuse. We routinely presume that jurors follow the court's instructions regarding the law. *See Commonwealth v. Johnson*, 542 Pa. 384, 401, 668 A.2d 97, 105 (1995). Therefore, an instruction to this effect would dispel the notion that the jurors would penalize the Commonwealth for not offering evidence to explain the speculation possibly lingering in their heads. The burden then lies with the defendant. The Commonwealth need not explain the issue; thus, if the defendant desires the benefit of the negative inference about the complainant's credibility that historically accompanies the victim of a sexual assault's failure to immediately report the abuse, he must raise it or suffer the consequences of having the judge instruct the jury not to consider it.

In light of the effect of § 3105, the *need* for the evidence in question in the Commonwealth's case-in-chief is minimal. Admittedly, the probative value must still be weighed against the prejudicial effect of the proffered evidence. *See Billa, supra.* The challenged evidence of prior crimes of violence is severely prejudicial. The impact of prior crimes, particularly violent ones, on a trial for a separate offense is well-settled. As we stated in *Commonwealth v. Bryant*, 515 Pa. 473, 476, 530 A.2d 83, 85 (1987) (citing *Commonwealth v. Spruill*, 480 Pa. 601, 606, 391 A.2d 1048, 1050 (1978)), ". . . evidence of prior criminal activity on the part of the accused is so highly prejudicial in its effect upon the jury as to be equaled only by an actual confession in its impact on the deliberative process." As the majority notes, " 'unfair prejudice' means the tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Majority Op. at 366, 925 A.2d at 141, (citing Pa.R.E. 403 cmt.). Unquestionably, the inherent prejudice involved with prior crimes, including the acts of violence

involved here, will improperly influence the jury and divert its attention, particularly where the defense chooses to forgo any challenge to the victim's failure to promptly report the alleged abuse. This would be even more so where the judge instructs the jury that the Commonwealth need not prove, or explain, anything with regard to the issue to sustain a conviction. Thus, I conclude that the prejudicial impact of the proffered evidence here outweighs its minimal probative value.

To be clear, the above analysis is applicable only to the Commonwealth's presentation, in its case-in-chief, of highly prejudicial evidence that is unrelated to the charged crimes. Where a defendant raises the issue of why the alleged victim failed to report the incident in a more timely manner, the circumstances change and the Commonwealth's need to explain the delay escalates to the point where introduction of the evidence *on rebuttal* will outweigh its prejudicial value. However, until such an attack is lodged, to ensure a fair trial, I would hold that the evidence is inadmissible. Therefore, I dissent.