J-A01031-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CALVIN JAY HUFFMAN, | |
| Appellant | No. 544 WDA 2014 |

Appeal from the Judgment of Sentence entered June 11, 2013,
in the Court of Common Pleas of Fayette County,
Criminal Division at No(s): CP-26-CR-0001293-2011
& CP-26-CR-0001329-2011

BEFORE:  FORD ELLIOTT, P.J.E., DONOHUE, and ALLEN, JJ.

MEMORANDUM BY ALLEN, J.:                **FILED FEBRUARY 06, 2015**

Calvin Jay Huffman ("Appellant") appeals from the judgment of sentence imposed after a jury convicted him of aggravated assault and related charges.[1]  We affirm.

The trial court summarized the pertinent facts and procedural history of the case in its opinion and order denying Appellant's post-sentence motion:

> The main incident giving rise to the charges in this case occurred in the early morning hours of April 24, 2011. Detective Donald M. Gmitter of the Uniontown City Police Department was notified of a shooting at the Splash Bar in Uniontown.  Two people had been shot and transported to different hospitals.   Detective Gmitter observed shell

---

[1] 18 Pa.C.S.A. § 2702.

casings and pools of blood throughout the area of the shooting, including on vehicles and the exterior walls of neighboring property.

Detective Gmitter collected shell casings and cartridges from three different types of guns: twenty-two caliber, twenty-five caliber, and forty caliber. After speaking with eyewitnesses at the scene, [Appellant] was identified as one of the shooters. After conducting a lawful search and seizure of [Appellant's] ex-girlfriend's vehicle, law enforcement officials recovered two deformed bullets, a brown piece of carpet, and one latent print.

Law enforcement also recovered and searched a second vehicle owned by [Appellant's] sister. The officers observed blood on the right rear seat belt, the middle of the right rear seat, the rear passenger's seat, and the rear passenger headrest. They recovered a cell phone, digital camera, a letter from [Appellant], a receipt with [Appellant's] name on it, a utility bill, a damaged twenty-two caliber live round, and the blood evidence. Detective Gmitter testified that one possible reason the live round was damaged was due to [Appellant's] gun jamming, which witnesses testified to observing during the shooting. The digital camera revealed a photo dated April 19, 2011 of [Appellant] holding a firearm, and the Commonwealth was able to confirm that date by sequencing other photos on the camera that were obviously taken on or near particular holidays, including St. Patrick's Day and Easter of that year.

In addition to the photos, there was a video recovered from the digital camera. [Appellant] was identified in the video showing off and discharging multiple rounds from a twenty-two caliber automatic firearm in a rural location several days prior to the April 24, 2011 shootings at the Splash Bar. Although there was never a firearm recovered in this case, [Appellant] was placed at the Splash Bar at the time in question, he was observed possessing and discharging a twenty-two caliber automatic firearm, and there were a number of projectiles consistent with [a] twenty-two caliber [gun] recovered from the scene and from inside the two vehicles.

Monique Curry, one of the shooting victims, knew [Appellant] and saw him standing behind her vehicle and saw him pull the trigger. She was shot twice in the buttocks while she was in her parked vehicle. The other shooting "victim" did not testify at trial.

The case went to trial three times. The first trial held on June 6, 2012 resulted in a mistrial due to the appearance of inappropriate contact with a juror, while the second trial held on October 5, 2012 before the Honorable Judge John F. Wagner, Jr. resulted in a mistrial due to a hung jury. On June 5, 2013, [Appellant] was convicted by a jury in this Court of one count of Aggravated Assault, two counts of Simple Assault, and one count each of Recklessly Endangering Another Person, Prohibited Person Not to Possess Firearms, and Possession of a Firearm Without a License. On June 11, 2013 [Appellant] was sentenced to standard range sentences aggregating to seven and one-half (7.5) to fifteen (15) years of incarceration, with time credit from June 9, 2011. A timely Post-Sentence Motion followed on June 18, 2013. The transcript [of the jury trial], however, was not ordered simultaneously, and as a result it was not completed until September 3, 2013.

Trial Court Opinion, 10/2/13, at 2-4. Following the denial of his post-sentence motion, Appellant filed this timely appeal.

Appellant raises the following issues:

I. DID THE TRIAL COURT ERR WHEN IT ALLOWED INTO EVIDENCE PICTURES OF APPELLANT HOLDING AND SHOOTING A MACHINEGUN LIKE WEAPON AFTER SAID PHOTOGRAPH HAD BEEN RULED OUT OF EVIDENCE AT A PREVIOUS TRIAL, ENDING IN MISTRIAL, BY ANOTHER JUDGE AS BEING TOO PREJUDICIAL VIOLATING THE COORDINATE JURISDICTION RULE?

II. ID THE PREJUDICIAL EFFECT OF SAID PHOTOGRAPH[S] CLEARLY OUTWEIGH ANY PROBATIVE VALUE THEY MAY HAVE HAD?

III. DID THE TRIAL COURT ERR WHEN IT REFUSED TO ALLOW QUESTIONING ABOUT TWEETING SENT AND

RECEIVED [REGARDING] MONIQUE CURRY AS COLLATERAL AFTER THE TRIAL COURT OPENED THE DOOR AND FIRST DELVED INTO THIS AREA OVER THE OBJECTION OF THE DEFENSE?

Appellant's Brief at 3.

In his first issue, Appellant argues that the trial court violated the "coordinate jurisdiction rule" by admitting photographs into evidence when, at Appellant's prior trial, Judge Wagner had determined that the photographs were inadmissible. Appellant's Brief at 6. Appellant asserts Judge Wagner ruled that the photographs were "to [sic] prejudicial at a previous trial (in front of [Judge Wagner]) which ended in a mistrial." *Id*.

Appellant's claim fails because the coordinate jurisdiction rule is inapplicable to Appellant's third trial. In cases involving the same procedural posture as the instant appeal — a retrial in which the subsequent trial judge admitted evidence previously ruled inadmissible in the first trial — our Supreme Court has held:

> When a court grants a new trial, the necessary effect thereof is to set aside the prior judgment and leave the case as though no trial had been held. . . . By operation of an order granting a new trial, the [case], in contemplation of law, is precisely in the same as if no previous trial had been held.

*Commonwealth v. Hart*, 387 845, 847 (Pa. 1978) (quoting *Commonwealth ex rel. Wallace v. Burke*, 45 A.2d 871, 871 (Pa. Super. 1951). Stated differently, "[b]ecause the grant of a new trial 'wipes the slate clean,'" upon retrial, "a previous court's ruling on the admissibility of

evidence generally does not bind a new court[.]" ***Commonwealth v. Paddy***, 800 A.2d 294, 311 (Pa. 2002).

Even if the coordinate jurisdiction applied to Appellant's retrial and it was determined that a violation occurred, any error in admitting the photographs was harmless, because Appellant's depiction thereon was cumulative of a video played at Appellant's third trial. ***See*** N.T., 6/4/13, at 70. Within his issues raised on appeal, Appellant does not challenge the Commonwealth's use of this video at trial. ***See e.g.***, ***Commonwealth v. Arrington***, 86 A.3d 831, 847 (holding that even if error occurred in admitting evidence of telephone conversation, it was harmless because it was "cumulative of other properly-introduced evidence with substantially similar content").

In his second issue, Appellant asserts that the trial court erred in admitting the photographs at issue because "the issue of prejudice of the pictures clearly outweighed the probative value." Appellant's Brief at 6. According to Appellant, this conclusion "is evidenced by the fact that in the [second trial] where the jury deliberated and was hung, they did not have these photos[;] when the instant jury was provided the photos, all else being the same, they convicted." ***Id.***

"It is well settled that the admissibility of evidence is a matter addressed to the sound discretion of the trial court and may be reversed only upon a showing that the court abused that discretion." ***Commonwealth v. Wynn***, 850 A.2d 730, 733 (Pa. Super. 2004) (citations

omitted). "Evidence is admissible if it is relevant—that is, if it makes a fact at issue more or less probable, or supports a reasonable inference supporting a material fact." **Id.** Our Supreme Court has summarized:

> Appellate courts typically examine a trial court's decision concerning the admissibility of evidence for abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. Typically, all relevant evidence, *i.e.*, evidence which tends to make the existence or non-existence of a material fact more or less probable, is admissible, subject to the prejudice/probative value weighing which attends all decisions upon admissibility. **See** Pa.R.E. 401; Pa.R.E. 402[.]

**Commonwealth v. Dillon**, 925 A.2d 131, 136-37 (Pa. 2007).

In rejecting Appellant's claim, the trial court reasoned in its Pa.R.A.P. 1925(a) opinion:

> [Appellant] argued that the admission of the photos was in violation of Pennsylvania Rule of Evidence 403 since the prejudicial impact outweighed the probative value. The Court disagrees and has indirectly addressed this issue in the Post-Sentence Motion Opinion.
>
> [Appellant] was charged with and ultimately convicted of several crimes, including Prohibited Person not to Possess a Firearm and Possessing a Firearm without a License. The photos, which were authenticated by the Commonwealth, were taken between St Patrick's Day and Easter of 2011. The record reflects that [Appellant] has been prohibited from possessing a firearm since 2007 due to his status as a convicted felon. **See** [N.T., 6/3/13, at 32]. Since the photos depict [Appellant] possessing a firearm four (4) years after his felony conviction, and it is accordingly implied that he could not have had a license to possess the firearm, the probative value of the

> photographic evidence substantially outweighs its prejudicial impact.

Trial Court Opinion, 6/10/14, at 2-3.

Once again, our review of the record supports the trial court's conclusion. In addition, we note that Appellant's argument regarding prejudice is specious. A review of the 2013 trial transcript reveals that "all else" was not "the same" in the evidence presented by the Commonwealth. As noted above, the Commonwealth, over Appellant's objection based upon an alleged discovery violation, played a video of Appellant handling and firing a weapon similar to one possessed by Appellant on the night of the incident. *See* N.T., 6/4/13, at 66-70. As acknowledged by Appellant during his testimony at the 2013 trial, this video was not played at Appellant's second trial in 2012. *See* N.T., 6/5/13, at 51. Appellant's second issue fails.

In his final issue, Appellant contends, "the trial court erred when it refused to allow questioning about Tweets sent and received by Monique Curry who claimed that she was harassed and intimidated by Autume [sic] Close, sister of [Appellant]." Appellant's Brief at 6. Appellant argues that the questioning involved relative evidence and was not merely collateral to his trial. According to Appellant:

> In fact, it was the trial court who first delved into this area and questioned Ms. Curry regarding the subject. [A]s Curry was the main witness against [Appellant,] [h]er credibility was paramount. The defense should have been permitted to inquire about this matter especially after the court opened the door to this inquiry.

*Id.*

In its Pa.R.A.P. 1925(a) opinion, the trial court explained why Appellant's claim had no merit:

> Next, [Appellant] argues that he should have been given the opportunity to question Commonwealth witness Monique Curry regarding social media correspondence, namely Twitter, between her and [Appellant's] sister, Autum[e] Close. The Court sustained the Commonwealth objection because it was a collateral issue to the case at bar. **See** [N.T., 6/5/13, at 24-27].
>
> Ms. Curry testified that Ms. Close was allegedly "tweeting to people" about Ms. Curry's testimony. **See** [N.T., 6/4/13, at 20]. Ms. Close allegedly wrote that Ms. Curry "was on the stand lying on her brother." **Id.** [at 21]. Ms. Curry testified that she has "been harassed [over the case] for two years. **Id.** [at 22]. This testimony was elicited by [Appellant on cross-examination].
>
> Following that testimony, [Appellant] called Ms. Close in an attempt to rebut Ms. Curry's testimony and accuse Ms. Curry of witness intimidation. The Court agreed with the Commonwealth that this was a collateral issue. **See** Pa.R.E. 403.
>
> Whatever occurred between Ms. Curry and Ms. Close after the shooting could only have marginal relevance, and it was already clear that they did not like each other. Moreover, the best evidence of the Twitter "conversations" was never presented. **See**, Pa.R.E. 1002. Diverting the trial into an **oral** discussion of what two witnesses did or did not say on Twitter after the incident was a pointless waste of time. If the evidence could have helped the defense, an "authenticable" printout should have been proffered. **See**, Pa.R.E. 1001(d).

Trial Court Opinion, 6/10/14, at 3.

We discern no abuse of discretion. Rule 611(a) of the Pennsylvania Rules of Evidence provides:

**Rule 611. Mode and Order of Examining Witnesses and Presenting Evidence**

**(a) Control by the Court; Purposes.** The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to:

(1) make those procedures effective for determining the truth;

(2) avoid wasting time; and

(3) protect witnesses from harassment or undue embarrassment.

Pa.R.E. 611(a). At trial, Appellant's counsel fully cross-examined Ms. Curry with regard to the "tweets," and, as stated by the trial court, during such questioning elicited via Curry's testimony that she had been harassed for being a "snitch." **See** N.T., 6/4/13, at 20-22. Given this examination by Appellant's counsel, we agree with trial court's assessment that the proffered testimony from Ms. Close would be collateral. **See**, **e.g.**, **Commonwealth v. Dowling**, 778 A.2d 683, 687 (Pa. Super. 2001) (explaining that, "[i]n exercising its discretion, a trial court may properly precluded cross-examination on collateral matters that are unrelated to the issues at trial").

In sum, because Appellant's claims of trial court error lack merit, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

J-A01031-15

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/6/2015