J-S61040-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, :   IN THE SUPERIOR COURT OF
                             :           PENNSYLVANIA
           Appellee      :
                             :
             v.             :
                             :
PATRICK REED MORAN,        :
                             :
          Appellant    :   No. 809 WDA 2014

Appeal from the PCRA Order April 23, 2014,
in the Court of Common Pleas of Potter County,
Criminal Division at No(s): CP-53-CR-0000148-2012

BEFORE:  FORD ELLIOTT, P.J.E., WECHT and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:       **FILED OCTOBER 16, 2014**

Patrick Reed Moran (Appellant) appeals from the order entered on April 1, 2014, denying his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  We affirm.

The background underlying this matter can be summarized in the following manner.

> On December 10, 2012, a jury convicted Appellant of possession of a firearm prohibited.  The conviction stemmed from Appellant's possession of a shotgun while on parole.  On February 8, 2013, the trial court sentenced Appellant to forty-eight (48) to one-hundred-twenty (120) months' imprisonment. Appellant timely filed a notice of appeal on February 25, 2013. …

***Commonwealth v. Moran***, 93 A.3d 496 (Pa. Super. 2013) (unpublished memorandum at 1).  "[On direct appeal,] Appellant argue[d] the Commonwealth improperly elicited prejudicial testimony concerning

---

* Retired Senior Judge assigned to the Superior Court.

Appellant's possession of a firearm, his threats to injure and/or kill his estranged wife, and his drug use. …" ***Id.*** at 2.

In its memorandum opinion affirming Appellant's judgment of sentence, this Court reproduced the complained-of testimony. The Court then initially stated, "After a thorough examination of these exchanges, we conclude the testimony regarding Appellant's drug use and threats to his estranged wife established context for Appellant's possession of the shotgun." ***Id.*** at 7. The Court, however, ultimately determined that Appellant waived his issue because he did not object to the testimony at trial. ***Id.***

Appellant did not petition our Supreme Court for allowance of appeal. However, he did file timely a *pro se* PCRA petition. His counsel subsequently filed a supplemental PCRA petition. The crux of Appellant's claim was that trial counsel was ineffective for failing to object to the testimony about which he complained on direct appeal.

The PCRA court held a hearing regarding Appellant's petition. On April 23, 2014, the court denied the petition, concluding that Appellant failed to establish the prejudice prong of the ineffective-assistance-of-counsel standard.[1] Appellant timely filed a notice of appeal. The PCRA court

---

[1] In the PCRA court's opinion in support of its order, the court, at least to some extent, conflated the prejudice prong of the ineffective-assistance-of-counsel standard with a prejudice analysis under Pennsylvania Rule of Evidence 403.

directed Appellant to comply with Pa.R.A.P. 1925(b), and Appellant then filed a Pa.R.A.P. 1925(b) statement.

In his brief to this Court, Appellant asks us to consider one question, namely, "Must trial counsel object to prejudicial statements by the prosecutor during a jury trial concerning threats to injure and/or kill [Appellant's] separated wife and [Appellant's] drug usage, when [Appellant] was never charged with these crimes?" Appellant's Brief at 2.

In support of his issue, Appellant notes that, just prior to his trial, a murder occurred in Potter County and that the murder "involved a firearm, threats, and an ex-wife (the victim)." *Id.* at 7. Appellant argues,

> [Trial counsel] did not object, nor request a mistrial, when testimony was presented by the Commonwealth that referred to [Appellant's] usage of a firearm and threats to injure/or kill his separated wife. This was particularly prejudicial as [Appellant] was not charged with these alleged threats, but also the facts were similar in the Potter County murder case[.]

*Id.* Appellant also complains that counsel failed to object to testimony regarding his use of drugs. Appellant does not seem to challenge the relevancy of the testimony regarding his drug use or threats to his estranged wife; rather, he seems to suggest that the testimony was unfairly prejudicial.

Our standard of review of the denial of a PCRA petition is limited to examining whether the court's rulings are supported by the evidence of record and free of legal error. *Commonwealth v. Anderson*, 995 A.2d 1184, 1189 (Pa. Super. 2010).

Appellant's issue involves a claim that his trial counsel rendered ineffective assistance of counsel. "To establish ineffectiveness of counsel, a PCRA petitioner must show the underlying claim has arguable merit, counsel's actions lacked any reasonable basis, and counsel's actions prejudiced the petitioner. Prejudice means that, absent counsel's conduct, there is a reasonable probability the outcome of the proceedings would have been different." **Commonwealth v. Jones**, 71 A.3d 1061, 1063 (Pa. Super. 2013) (citations omitted).

At Appellant's trial, the jury was charged with determining whether the Commonwealth proved that Appellant violated 18 Pa.C.S. § 6105(a)(1), which provides:

> A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

Appellant stipulated that he had been convicted of an offense enumerated in 18 Pa.C.S. § 6105(b). Thus, in order to convict Appellant, the Commonwealth simply had to prove that Appellant possessed, used, controlled, sold, transferred, or manufactured a firearm.

The Commonwealth's first witness at trial was Joshua Blass. According to Blass, he purchased a shotgun from a store on May 14, 2012, and then sold that gun to Appellant approximately two weeks later.

The second witness to testify was Stacey Imler. Imler testified that Appellant was a neighbor and friend. Imler's family owns a camp in Tioga County. Imler stated that Appellant and others were at that camp in late May or early June of 2012.

Appellant highlights the following exchange between the prosecutor and Imler:

> Q. If you can recall what was [Appellant] doing [at the camp] at that time?
>
> A. We were up having a good time, had a [bonfire], we were drinking, partying that was about it.
>
> Q. And was [Appellant] drinking and partying with you guys?
>
> A. He's not a big drinker I believe he partook in the party.
>
> Q. Any drugs?
>
> A. Yes.

N.T., 12/10/2012, at 30-31.

Imler went on to testify that he observed Appellant holding a shotgun at the camp. While Imler stated that Blass owned the gun, he also testified that he asked Appellant why he purchased the gun. According to Imler, at some point, Appellant said that "he takes his marriage vows very seriously and to death do us part." *Id.* at 33. Imler then stated that Appellant and Appellant's wife, Rebecca Carr, had broken up; so, Imler "warned [Carr] that [Appellant] had a gun and [] also warned her about the vows to death do us part." *Id.* at 34. Imler further testified that, after he informed Carr of the

gun at his camp, she and Matt Yoder retrieved it in order to keep Appellant from getting the gun again.

On cross-examination, Imler admitted to using "alcohol, weed, [and] bath salt" during the time Appellant was at his camp. *Id.* at 37. He also believed Blass, who also was at the camp, may have used bath salt as well. On redirect examination, Imler stated that he did not see Appellant use any bath salt. Imler also stated,

> Everybody knows [Appellant], knows that his marriage vows were sacred and anyone that's married that's part of your vows too to death do us part for anyone that's married part of you vows is to death do us part. He meant one thing or another it's still death do us part.

*Id.* at 40.

Ryan Rachiele testified next for the Commonwealth. The focus of his testimony was that, in late May or early June of 2012, Appellant offered to give him a shotgun. Rachiele asserted that he declined Appellant's offer.

The Commonwealth then elicited testimony from Carr. Carr stated that she and Appellant separated in May of 2012 due to Appellant's anger and abusiveness. She reported that, after she moved out of the couple's apartment, Imler informed her that Appellant had a shotgun. According to Carr, at some point after speaking to Imler, she asked Appellant why he got the gun; he stated, "You know why." *Id.* at 58. The prosecutor asked Carr if she knew what Appellant meant by that statement, and she responded, "From conversations from before I left him, yeah, he said that I would get a

bullet in the head before I would leave him and death, until death do us part." *Id.*

Carr further testified that, after her conversation with Appellant, she and Matt Yoder went to Imler's camp and retrieved the gun. The Commonwealth also presented Yoder as a witness, and for the most part, he corroborated Carr's testimony.

Roger Probel, Carr's step-father, testified for the Commonwealth. He reported that Yoder gave him the shotgun and that he then gave the gun to the chief of police in Galeton. The remainder of the testimony came from the Galeton chief of police, a forensic evidence technician, and a firearm and tool mark examiner.

We first will address Appellant's claim that trial counsel was ineffective for failing to object to Imler's testimony regarding Appellant's drug use. The only testimony that arguably suggests that Appellant used any drugs was Imler's positive response to the prosecutor's question, "Any drugs?" *Id.* at 31. The prosecutor did not specifically ask Imler if Appellant used drugs. Furthermore, before he answered this ambiguous question, Imler stated that Appellant was not a big drinker, and after he answered the question, Imler testified that he did not see Appellant take any bath salt.

Thus, even if we assume *arguendo* that trial counsel should have objected to this passing reference to drug use, we nonetheless conclude that Appellant has not established the prejudice prong of the ineffective-

assistance-of-counsel standard. Appellant has failed to convince us that, had counsel successfully objected to the prosecutor's question and Imler's answer, there is a reasonable probability that the outcome of his trial would have been different.

We now will address Appellant's claim that trial counsel was ineffective for failing to object to testimony regarding his devotion to his marriage vows, which could be construed as threats to Carr. Appellant seems to suggest that trial counsel should have objected to this testimony on the ground that its probative value was outweighed by the danger of causing him unfair prejudice. We disagree.

Pennsylvania Rule of Evidence 403 provides that a "court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. "'Unfair prejudice' means a tendency to suggest decision on an improper basis or divert the jury's attention away from its duty of weighing the evidence impartially." **Commonwealth v. Wright**, 961 A.2d 119, 151 (Pa. 2008) (citation omitted). Our Supreme Court has explained that

> [e]vidence will not be prohibited merely because it is harmful to the defendant. Th[e Supreme] Court has stated that it is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural

development of the events and offenses for which the defendant is charged.

***Commonwealth v. Dillon***, 925 A.2d 131, 141 (Pa. 2007) (citation omitted).

As we noted above, Appellant does not challenge the relevancy of the evidence regarding the threats he made toward Carr. Furthermore, evidence of those threats helped form the history and natural development of the events and offenses for with Appellant was charged. Testimony regarding those threats explained why Appellant purchased the gun, how Carr knew about the gun, why she retrieved the gun, and why Probel turned over the gun to the police. Given the nature and context of the testimony regarding Appellant's threats toward Carr, we are not persuaded that this evidence had a tendency to suggest a decision on an improper basis or diverted the jury's attention away from its duty of weighing the evidence impartially. We thus conclude that Appellant's claim that counsel should have objected to this testimony on the basis that it was unfairly prejudicial lacks arguable merit.

For these reasons, we conclude that the PCRA court properly denied Appellant's PCRA petition. We, therefore, affirm the court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/16/2014