J-S93023-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| WARREN E. YERGER | |
| Appellant | No. 967 EDA 2016 |

Appeal from the Judgment of Sentence Dated June 17, 2015
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0002650-2013

BEFORE:  DUBOW, J., SOLANO, J., and PLATT, J.[*]

MEMORANDUM BY SOLANO, J.:                    **FILED MARCH 17, 2017**

Appellant Warren E. Yerger appeals the judgment of sentence of 339 to 690 years' incarceration imposed following his conviction of 158 counts of sexual abuse[1] of four children. We affirm.

The trial court set forth the facts of this case as follows:

In December 2012, Trooper Heather Heffner, from the Pennsylvania State Police Reading Barracks, received information that [Appellant] sexually assaulted four child victims while he

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Specifically, Appellant was convicted of 11 counts of rape (18 Pa.C.S. § 3121); 56 counts of involuntary deviate sexual intercourse (18 Pa.C.S. § 3123); 29 counts of aggravated indecent assault (18 Pa.C.S. § 3125); 9 counts of incest (18 Pa.C.S. § 4302); 4 counts of endangering the welfare of children (18 Pa.C.S. § 4304); 32 counts of corruption of minors (18 Pa.C.S. § 6301); 3 counts of attempted rape (18 Pa.C.S. § 901); and 14 counts of conspiracy to commit various sexual offenses (18 Pa.C.S. § 903).

was responsible for their care and support from 1989 through 2012. During Trooper Heffner's investigation all four victims, now adults, disclosed that while they resided with [Appellant] they were subjected to sexual, physical, and emotional assaults on a regular basis. [Appellant]'s ongoing criminal conduct lasted for twenty-three years and encompassed four different counties in the Commonwealth of Pennsylvania. The majority of the sexual abuse took place in Chester County, although it continued in McKean, Montgomery and Berks counties.

The sexual abuse committed by [Appellant] began in 1989 in Chester County with his stepdaughter and stepson, and continued with these victims in McKean County from 1990-1993. The sexual abuse started when the children were 3 and 4 years old, respectively, and occurred almost on a daily basis. Sometimes [Appellant] would assault the children simultaneously while they were in their bunk beds at night. During the assaults, [Appellant] forced the children to touch his genitals, made them engage in oral sex, and he digitally penetrated their genitals. [Appellant] anally raped his stepson multiple times, and would tell him "stop crying like a baby" when these rapes occurred. [Appellant] also forced the children to engage in sexual acts with each other. If the children refused to comply with [Appellant]'s demands, he would either hit them or threaten them, or their mother with violence. At one point, [Appellant] forced his stepson to have vaginal intercourse with [Appellant]'s two year old biological daughter. Later, [Appellant] attempted to force [Mother], the biological mother of all the victims in the case, to sexually assault her daughter, but she refused, and [Appellant] severely beat her.

During the entire time he resided with these children, [Appellant] also physically and emotionally abused them, as well as [Mother]. On one occasion, [Appellant] broke his stepson's nose [by kicking] him in the face. The children were often denied food and water by [Appellant]. On numerous occasions, [Appellant] yelled racial epithets at his biracial stepchildren. [Appellant] would lock his stepson in his bedroom for so long that he would urinate in his pants.

While in McKean County, [Appellant] and [Mother] had two daughters. Around 1993, [Mother] left the residence with all four children and moved into a women's shelter. Despite [Mother's] attempt to keep custody of all four children, the Court awarded

[Appellant] custody of his two biological daughters. [Appellant] then moved with his biological daughters to Chester County.

One of his daughters recalled that her sexual abuse began in Chester County around 1995 when she was 4 or 5 years old. It started with [Appellant] touching her genitals, and then he taught her how to masturbate him. [Appellant] and his two biological daughters then moved to Montgomery County with co-defendant Deborah Keeley ("Keeley"). They lived with Keeley in Montgomery County from 1996 until 2001 and during that time, [Appellant] and Keeley had two sons. [Appellant] sexually abused both his daughters during the time they resided in Montgomery County with Keeley. The abuse continued until the girls finally left his home well into their teens and early twenties, respectively. [Appellant] would threaten or beat the girls if they refused to comply with his sexual demands.

While in Montgomery County, [Appellant] digitally penetrated his daughters, forced them to touch his genitals, engaged in oral sex, and eventually raped them. [Appellant] also made his daughters engage in sexual acts with each other while he watched and instructed them on what to do. At times, [Appellant] would sexually assault both girls simultaneously. [Appellant] routinely forced his daughters to perform oral sex on him or touch his genitals before and after school. Most of the assaults occurred when Keeley was out of the house at work. Later on, [Appellant] anally raped one daughter on multiple occasions.

Both girls feared Keeley as she would also physically and emotionally abuse them. Keeley would berate, slap, punch or pull the girls' hair regularly. One of the victims stated that Keeley tried to suffocate her with a pillow after she had an uncontrollable coughing fit. Keeley and [Appellant], together, sexually assaulted one of the victim[s] when she was approximately 6 or 7 years old.

[Appellant] and Keeley separated in 2001, and [Appellant] moved back to Chester County with his two daughters, wherein they remained from 2001 until 2010. While in Chester County, co-defendant Leslie Yerger ("Leslie"), a former babysitter for [Appellant] and Keeley, married [Appellant] and moved in with him and his children in 2001. Leslie became a participant in the sexual abuse of [Appellant]'s daughters. While in Chester County, [Appellant] forced his daughters to perform oral sex on

him and made them touch Leslie's genitals and breasts on multiple occasions. [Appellant] physically abused his daughters and Leslie on multiple occasions.

[Appellant] continued to sexually abuse both of his daughters when they moved back to Montgomery County in 2010. One daughter left the residence in 2011, became temporarily homeless, and attempted suicide. The other daughter moved with [Appellant], Leslie and their children to Berks County in 2012. The sexual abuse between [Appellant] and that daughter continued in Berks County. [Appellant]'s reign of terror and abuse finally ended in October 2012, when [Appellant]'s daughter left the Berks County residence and moved into a women's shelter.

Trial Ct. Op., 5/2/16, at 2-4.

Appellant was tried by a jury from December 15-22, 2014.[2] During the trial, the Commonwealth was permitted to introduce evidence that Appellant physically abused the victims, his female companions, and family pets. This evidence included testimony that Appellant beat his children and female companions, broke his stepson's nose, locked his stepson in his room for extended periods of time, and restricted the children's access to food. With respect to the pets, the Commonwealth introduced evidence that Appellant shot a dog that snapped at one of the children, severely beat another dog, stomped on a kitten that he thought had scratched a child, and shot other kittens. Appellant objected to the evidence regarding the animals, but not to the evidence regarding the physical abuse of his family members. Appellant argued that the animal abuse was irrelevant and highly prejudicial. N.T.,

_____

[2] Co-defendants Deborah Keeley and Leslie Yerger pleaded guilty.

pre-trial hearing, 11/25/14, at 85-86. At the conclusion of the trial, the court instructed the jury that they could consider evidence of physical assaults on other people and animals only for the effect it had on the child victims in this case. N.T., 12/22/14, at 133-34.

On December 22, 2014, the jury found Appellant guilty of 158 counts, including multiple counts of rape, attempted rape, involuntary deviate sexual intercourse, aggravated indecent assault, endangering the welfare of children, corruption of minors, and conspiracy.

After a hearing on June 17, 2015, the trial court found Appellant to be a sexually violent predator. *See* 42 Pa.C.S. § 9799.24 (requiring assessment of individuals convicted of sexually violent offenses). The trial court proceeded immediately to sentencing, where it heard victim impact statements and Appellant's statement. Before imposing its sentence, the court stated:

> I have reviewed the presentence investigation. I've reviewed the Commonwealth's motion and the motion submitted by defense. I've listened to everything that was presented here during sentencing. I've considered all the sentencing alternatives that are available to me set forth in Pennsylvania law starting from the imposition of no sentence to the imposition of total confinement, probation, fines, intermediate punishment, and I believe that total incarceration is required. To do less would depreciate the seriousness of these crimes.

> The jury listened for a week to testimony in this matter. They listened to evidence presented by the Commonwealth on some 178 charges brought on the information and they've rendered 20 not guilty verdicts and 158 guilty verdicts. That presents an extraordinary number of charges on which to impose sentences.

Each of the crimes that the jury has found [Appellant] guilty of are horrific. The testimony – the jury listened to the testimony of four victims, two conspiratorial codefendants – no, one, and one former woman in relationship with [Appellant]. They listened to that testimony and they found it to be credible.

There is ample testimony in support of these convictions, overwhelming testimony in support of the convictions.

Mr. Yerger, I was looking for you to accept responsibility; you have not. That is your right. But the jury has imposed responsibility on you. Since you do not accept responsibility and have not taken steps towards rehabilitation on the charges the jury has found you guilty based upon way more than sufficient evidence, I impose the following sentences on the crimes on which you were convicted.

N.T., sentencing, 6/17/15, at 112-13. The court then imposed its sentence,

which totaled 339 to 690 years' incarceration. The court further stated:

I impose that sentence after having listened to the evidence in this case, having listened to the impact on the victims in this case. The testimony is replete with bases for conviction. I've been on the bench for 16 years. This is the worst case of child sexual abuse I've ever seen or heard of in my years on the bench or in practice.

You have accepted no responsibility in this, Mr. Yerger. In fact, you have blamed the victims repeatedly throughout the course of the trial and in the sentencing.

I'm fully cognizant of the fact that this is an extraordinarily large number of years to impose a sentence, but I believe in this case it's warranted. Not as much as you will actually serve all of the time, but society needs to understand that this conduct is not acceptable.

*Id.* at 120-21.

On June 19, 2015, Appellant's trial counsel filed a notice of appeal and a motion to withdraw. Appellant did not object to the motion to withdraw, and the trial court granted it on June 23, 2015. On June 29, 2015, Appellant

filed a *pro se* post-sentence motion challenging the weight of the evidence. On July 14, 2015, the trial court appointed new counsel for Appellant and ordered him to file a Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal. On July 17, 2015, the trial court denied Appellant's *pro se* post-sentence motion, noting that it was untimely and that Appellant, who was represented by counsel, was not entitled to hybrid representation. That same day, Appellant's new counsel filed a "Motion for Reconsideration of Judgment of Sentence and in the Alternative *Nunc Pro Tunc* Motion for Post Sentence Relief Pursuant to Pennsylvania Rule of Criminal Procedure 720(b)." In the July 17th motion, Appellant argued that his sentence was excessive, the verdict was contrary to the weight of the evidence, and the evidence was insufficient to support the verdict. The same day, the trial court granted reconsideration. After several continuances, the trial court denied the *nunc pro tunc* motion for post-sentence relief on March 7, 2016.[3] Appellant filed a timely notice of appeal.

---

[3] Generally, a trial court no longer has jurisdiction over a case once an appeal is taken. Pa.R.A.P. 1701(a). However, under Appellate Rule 1701(b)(3), a trial court may grant reconsideration of an order which is the subject of an appeal if the motion is timely and if the trial court grants the motion before the statutory appeal deadline expires (generally, within 30 days after entry of the order from which the appeal was taken). Here, the trial court allowed the motion for reconsideration to be filed *nunc pro tunc* and granted that motion on July 17, 2015 — that is, before expiration of the 30-day appeal deadline. Accordingly, based upon Rule 1701(b)(3), this Court dismissed Appellant's first notice of appeal as inoperative. **See** Dkt. No. 2112 EDA 2015.

- 7 -

In this appeal, Appellant raises the following issues:

The Trial Court erred by allowing the Commonwealth to bring in 404 B evidence regarding the torturing and killing of animals.

The Trial Court erred by giving Mr. Yerger an excessive sentence of 339 years to 690 years.

Appellant's Brief at 4.

### Objection to Evidence of Animal Abuse

Appellant first claims that the trial court erred in admitting evidence that he abused and killed animals. He argues that this evidence was inadmissible under Pennsylvania Rule of Evidence 404(b).

We apply the following standard of review to this claim:

The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

**Commonwealth v. Woodard**, 129 A.3d 480, 494 (Pa. 2015) (quotation marks and citations omitted), **cert. denied**, 137 S. Ct. 92 (2016).

"Typically, all relevant evidence, *i.e.*, evidence which tends to make the existence or non-existence of a material fact more or less probable, is admissible, subject to the prejudice/probative value weighing which attends all decisions upon admissibility." **Commonwealth v. Dillon**, 925 A.2d 131, 136 (Pa. 2007). One exception to this general rule is that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in

order to show that on a particular occasion the person acted in accordance with the character." Pa.R.Evid. 404(b)(1). However, evidence of an uncharged crime may be admissible for a purpose other than to show criminal propensity. While Rule 404(b)(2) lists a number of specific permissible purposes, "[t]his list is not exhaustive." *Dillon*, 925 A.2d at 137. The Supreme Court of Pennsylvania has recognized that one permissible purpose of such evidence is "to furnish the context or complete story of the events surrounding a crime." *Id.* This is often referred to as the *res gestae* exception. *Id.*

Even if an exception to Rule 404(b)'s general prohibition applies, the evidence of other crimes is admissible only "if only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.Evid. 404(b)(2). "'Unfair prejudice' means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.Evid. 403 cmt.

In *Dillon*, the defendant was accused of sexually assaulting a child, and the Supreme Court held that it was permissible under Rule 404(b) for the Commonwealth to introduce in its case in chief evidence that the defendant physically abused family members of the complainant. *Dillon*, 925 A.2d at 136-42. The Court explained that the evidence was "relevant for purposes other than to show [Dillon's] bad character and criminal propensity." *Id.* at 139. The evidence: (1) "tend[ed] to show that [the complainant's] experiences with [Dillon], including those assaults on family

- 9 -

members, caused her to fear making a prompt report"; and (2) was "relevant for *res gestae* purposes, *i.e.*, to explain the events surrounding the sexual assaults." **Id.** The Court stated that the physical abuse was particularly relevant given the lengthy period of time during which the sexual abuse was alleged to have occurred (four years) and the fact that the complainant did not report the sexual abuse until three years after it ended. **Id.** With respect to the issue of prejudice, the Court noted:

> Evidence will not be prohibited merely because it is harmful to the defendant. This Court has stated that it is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged. Moreover, we have upheld the admission of other crimes evidence, when relevant, even where the details of the other crime were extremely grotesque and highly prejudicial.

**Id.** at 141 (internal quotation marks and citations omitted). The Court noted, however, that the trial court must "carefully tailor[] how and to what degree evidence of the reasons for [the complainant's] delayed report is introduced at trial" and must give limiting instructions. **Id.**

Here, as in **Dillon**, the charged sexual abuse occurred over a long period of time, and none of the victims reported it promptly. Thus, as the trial court explained, the evidence of Appellant's physical assaults on his children, female companions, and pets was relevant because it tended to show that the victims delayed in reporting because they were terrified of Appellant. **See** Trial Ct. Op. at 7-8; **Dillon**, 925 A.2d at 139.

Further, we agree with the trial court that, in light of the "overwhelming amount of evidence in this case," the probative value of the animal cruelty evidence outweighed any potential for unfair prejudice. *See* Trial Ct. Op. at 8. We note that the testimony regarding animal cruelty constituted a very small part of a more than weeklong trial, during which the jury heard extensive horrific testimony regarding Appellant's repeated sexual assaults on the children. We further note that the trial court provided an appropriate limiting instruction, explaining that the evidence of physical abuse of people and animals could be considered only for the effect it had on the child victims who witnessed it. The jury is presumed to have followed the court's instruction. *See Commonwealth v. Hairston*, 84 A.3d 657, 666 (Pa.), *cert. denied*, 135 S.Ct. 164 (2014).

## Sentence

Appellant's second claim is that his sentence of 339 to 690 years' imprisonment was excessive. This is a challenge to the discretionary aspects of his sentence. "[A] challenge to the discretionary aspects of a sentence is not appealable as of right." *Commonwealth v. Colon*, 102 A.3d 1033, 1042 (Pa. Super. 2014), *appeal denied*, 109 A.3d 678 (Pa. 2015); *see* Sentencing Code, 42 Pa.C.S. § 9781(b) (providing that this Court has discretion to allow an appeal of the discretionary aspects of a sentence if the appeal presents a substantial question as to the sentence's propriety). Therefore, before we exercise jurisdiction to reach the merits of Appellant's

- 11 -

claim, we must verify that Appellant's appeal is properly before this Court — that is, that his appeal was timely filed and that the issues he seeks to raise were properly preserved. **Colon**, 102 A.3d at 1042-43. If so, we must then determine "whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence" pursuant to Appellate Rule 2119(f), and "whether th[at] concise statement raises a substantial question that the sentence is appropriate under the sentencing code." **Id.** Only if the appeal satisfies these requirements may we proceed to decide the substantive merits of Appellant's claim. **Id.** at 1043.

Here, the appeal is timely and Appellant preserved his issue in his *nunc pro tunc* post-sentence motion and Pa.R.A.P. 1925(b) statement. However, Appellant's brief fails to comply with Rule 2119(f) of the Rules of Appellate Procedure in that it does not contain a concise statement of reasons upon which he relies for allowance of an appeal with respect to the discretionary aspects of his sentence. Rule 2119(f) was promulgated by the Supreme Court to implement the Legislature's directive in Section 9781(b) of the Sentencing Code that the discretionary aspects of a sentence may be challenged only by a petition for allowance of an appeal. To "maintain[] consistency between practice under this section of the Sentencing Code and typical appellate practice in Superior Court, which does not ordinarily have discretion as to the exercise of its jurisdiction," the Supreme Court, in effect,

provided for the petition for allowance of appeal to be accomplished by a two-part process: the filing of a notice of appeal, and the inclusion of a Rule 2119(f) statement at the time of briefing. **See Commonwealth v. Tuladziecki**, 522 A.2d 17, 19 (Pa. 1987). The Rule 2119(f) statement enables this Court to make a preliminary determination whether the appellant raises a substantial sentencing question that merits review, before actually addressing the merits of that question. **See id.** at 19-20. By failing to file a Rule 2119(f) statement, Appellant failed properly to invoke this process to seek review of the discretionary aspects of his sentence, and we therefore need not consider this issue. **See Commonwealth v. Gambal**, 561 A.2d 710, 714 (Pa. 1989) (Superior Court properly enforced Rule 2119(f) *sua sponte*, quashing appeal, although it should have granted Appellant's application for leave to file an amended brief).

We observe, however, that the Commonwealth does not object to this deficiency. Indeed, while its brief quotes the language from Section 9781(b) of the Sentencing Code that provides only for discretionary review, **see** Commonwealth's Brief at 19, and also quotes case law setting forth the requirements for a Rule 2119(f) statement, **see id.** at 17-18 (quoting **Commonwealth v. Brown**, 587 A.2d 4, 5-6 (Pa. Super. 1991), the Commonwealth studiously avoids making any argument based on Appellant's failure to file a Rule 2119(f) statement. In **Gambal**, 561 A.2d at 714, the Supreme Court held that if the Commonwealth does not object to

an appellant's failure to file a Rule 2119(f) statement and if that failure does not hinder this Court's ability to determine whether the appellant raises a substantial sentencing question and to review the merits of that question, we may proceed to determine whether there is a substantial question. **See also Commonwealth v. Kiesel**, 854 A.2d 530, 533 (Pa. Super. 2004) ("when the appellant has not included a Rule 2119(f) statement and the appellee has not objected, this Court may ignore the omission and determine if there is a substantial question that the sentence imposed was not appropriate"). Here, despite the absence of a separate Rule 2119(f) section in Appellant's brief, the argument in that brief regarding Appellant's sentence provides us with sufficient information to make a preliminary determination whether Appellant is raising a substantial question. **See** Appellant's Br. at 12-14. We therefore proceed to examine Appellant's sentencing issue.

A claim that a sentence is excessive does not necessarily raise a substantial question for purposes of Section 9781(b) of the Sentencing Code. **Commonwealth v. Dodge**, 77 A.3d 1263, 1270 (Pa. Super. 2013) (**Dodge III**), **appeal denied**, 91 A.3d 161 (Pa. 2014). However, a claim that an aggregate sentence resulting from the imposition of consecutive sentences is excessive raises a substantial question if the "decision to sentence consecutively raises the aggregate sentence to, what appears upon its face

to be, an excessive level in light of the criminal conduct at issue in the case."
*Id.* at 1273 (citation omitted).[4]

In ***Dodge III***, this Court held that the defendant raised a substantial question when he claimed that his aggregate sentence of 40 years and 7 months to 81 years and 2 months of incarceration was excessive based on the criminal conduct in which he engaged. ***Dodge III***, 77 A.3d at 1273. The defendant in ***Dodge*** had been convicted of forty counts of receiving stolen property, two counts of burglary, two counts of criminal trespass, and one count each of possession of a small amount of marijuana, possession of drug paraphernalia, and unauthorized use of a motor vehicle. ***Id.*** at 1266-67. We cautioned that although Dodge had raised a substantial question in his particular case, a defendant does not raise a substantial question "where the facts of the case [being reviewed] do not warrant the conclusion that there

_____

[4] Appellant characterizes the sentence imposed in this case as a "virtual life sentence" and argues that "a substantial question arises where a sentence is a virtual life sentence." Appellant's Brief at 13 (citing ***Commonwealth v. Dodge***, 957 A.2d 1198 (Pa. Super. 2008) ("***Dodge II***"), ***appeal denied*** 980 A.2d 605 (Pa. 2009)). This argument is an incomplete and inaccurate distillation of our holding in ***Dodge II***, where we recognized that a virtual life sentence was excessive ***in light of the criminal conduct at issue*** in that case. ***See Dodge II***, 957 A.2d at 1202 ("we conclude that, based on the record before us, the trial court abused its discretion in imposing a life sentence for non-violent offenses with limited financial impact"). As we discuss in the text, not every imposition of a virtual life sentence is *per se* invalid, so as to automatically raise a substantial question of impropriety under the Sentencing Code.

is a plausible argument that the sentence is *prima facie* excessive based on the criminal conduct involved." ***Id.*** at 1271.[5]

By contrast, in ***Commonwealth v. Prisk***, 13 A.3d 526, 533 (Pa. Super. 2011), this Court held that the defendant did not raise a substantial question by claiming that his aggregate sentence of 633 to 1,500 years' imprisonment was excessive. The Court explained:

> Although a substantial question appears to exist on the surface, we must emphasize that the jury found [Prisk] guilty of three hundred and fourteen (314) separate offenses. These offenses stemmed from Appellant's systematic sexual abuse of his stepdaughter, which occurred on an almost daily basis over the course of six years.

***Id.***[6]

Similarly, in ***Commonwealth v. Treadway***, 104 A.3d 597, 600 (Pa. Super. 2014), this Court held that the defendant did not raise a substantial question where he claimed that his aggregate sentence of 100 to 200 years was excessive in light of his criminal conduct. Treadway had been convicted of 45 counts of various sex crimes, perpetrated over the course of years on

---

[5] In ***Dodge III***, this Court concluded that although Dodge had raised a substantial question, the trial court did not abuse its discretion in sentencing him. ***Dodge III***, 77 A.3d at 1274-78.

[6] Appellant claims that his case is distinguishable from ***Prisk*** because Prisk was convicted of 314 offenses, while Appellant was convicted of 158. Appellant's Brief at 14. We note that although Appellant was convicted of fewer offenses than Prisk, he also received a sentence that was approximately 300 years less than that of Prisk. We therefore find Appellant's attempt to distinguish ***Prisk*** unpersuasive.

his stepdaughter. *Id.* at 598. This Court noted that, "[w]hen considered in a vacuum, a sentence of 100 to 200 years might seem extreme. However, viewed in the context of [Treadway's] conduct, we cannot conclude that the sentence was manifestly excessive." *Id.* at 600.

Instantly, Appellant was convicted of 158 counts of sex crimes perpetrated against his four children and stepchildren. His sentence of 339 to 690 years' incarceration, considered in a vacuum, might appear to be excessive. However, we hold that he has not raised a substantial question that his sentence is excessive in light of the criminal conduct at issue in this case. *See Treadway*, 104 A.3d at 600; *Prisk*, 13 A.3d at 533.[7] Appellant's

_____

[7] Viewing the sentence in terms of the specific charges at issue underscores the magnitude of Appellant's crimes and the reasonableness of his sentences with respect to them. Appellant was sentenced as follows:

Count 1 and 1(a), Rape — 5-10 years consecutively

Count 2, Count 2(a)-(g), Involuntary Deviate Sexual Intercourse (IDSI) — 5-10 years consecutive to each other and consecutive to Count 1(a)

Count 3, Count 3(a), (b), Aggravated Indecent Assault — 4-10 years each concurrent to each other and also to Count 1

Count 4, Count (a)-(c), Corruption of Minors — No penalty

Count 5, Endangering the Welfare of Children — No penalty

Count 6, Count 6(a)-(g), IDSI — 5-10 years each, consecutive to each other and also consecutive to count 2(g)

Count 7, Count 7 (a)-(e), Aggravated Indecent Assault — 4 -10 years each, concurrent to count 6 and concurrent to each other

*(Footnote Continued Next Page)*

*(Footnote Continued)* ————————————

Count 8, 8(a)-(c), Corruption of Minors — No Penalty

Count 9, Endangering the Welfare of Children — No Penalty

Count 10(a)(1)-(a)(5), Rape — 5-10 years each, consecutive to count 6 (g) and all consecutive to each other

Count 10(b)(1)-(3), Attempted Rape — Merge

Count 11, Count 11(a)-(s), IDSI — 5-10 years each, consecutive to count 10(a) and all consecutive to each other

Count 12 (a)(1)-(7), Aggravated Indecent Assault — 3-10 years concurrent to 10(a)(1) and all concurrent to each other.

Count 12 (b)(1)-(3), Aggravated Indecent Assault — 3-10 years concurrent to 10(a)(1) and all concurrent to each other

Count 13, Count 13(a)-(d), Incest — no penalty

Count 14, Count 14(a)-(k), Corruption of Minors — No penalty

Count 15, Endangering the Welfare of Children — No Penalty

Count 16, Conspiracy to commit IDSI — 4 -20 years consecutive to Count 11(s)

Count 17, Conspiracy to commit Aggravated Indecent Assault — 2 -10 years concurrent to Count 16.

Count 18, Conspiracy to commit EWOC — 1-5 years concurrent to Count 16

Count 19, Conspiracy to commit Corruption of Minors — 1-2 years concurrent to Count 16

Count 20 and 20(a), Conspiracy to commit IDSI — 4-20 years concurrent to count 16 and concurrent to each other

Count 21 and 21(a), Conspiracy to commit Aggravated Indecent Assault — 3 -10 years concurrent to each other and also to count 16

*(Footnote Continued Next Page)*

case is clearly distinguishable from **Dodge**, in which the defendant committed only non-violent offenses.

Even if Appellant had raised a substantial question, his claim would be meritless. As we have frequently explained:

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯

> Count 22, Conspiracy to commit corruption of minors — 1-2 years concurrent to count 16
>
> Count 23, Conspiracy to commit Endangering Welfare of Children — 1-2 years concurrent to count 16
>
> Count 24, 24(a)-(c) Rape — 5-10 years each consecutive to count 16 and consecutive to each other
>
> Count 25, 25(a)-(s), IDSI — 5-10 years each consecutive to count 24(c) and consecutive to each other
>
> Count 26(a)(1)-(8), Aggravated Indecent Assault — 3-10 years each concurrent to Count 25 and concurrent to each other
>
> Count 26(b)(1)-(2), Aggravated Indecent Assault — 3-10 years each concurrent to Count 25 and concurrent to each other
>
> Count 27, Count 27(a)-(c), Incest — no penalty
>
> Count 28, Count 28(a)-(k), Corruption of Minors — No penalty
>
> Count 29, Endangering Welfare of Children — No penalty
>
> Count 30, Conspiracy to commit IDSI — 4-20 years concurrent to count 16
>
> Count 31, Conspiracy to Commit Aggravated Indecent Assault — 4-10 years concurrent to Count 16
>
> Count 32, Conspiracy to Commit Corruption of Minors — 1-2 years concurrent to Count 16
>
> Count 33, Conspiracy to Commit Endangering Welfare of Children — 1-2 years concurrent to Count 16.

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, an appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa. Super. 2008) (citation omitted), *appeal denied*, 980 A.2d 607 (Pa. 2009).

The Sentencing Code, 42 Pa.C.S. § 9721(b), provides that a court should impose a sentence of confinement that is "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." *See Commonwealth. v. Walls*, 926 A.2d 957, 962 (Pa. 2007). Here, the trial court explained its sentence as follows:

The sentence imposed by this Court is within the standard guideline ranges of the Sentencing guidelines, and is not excessive given the facts of the case. Furthermore, the Court did not sentence [Appellant] to consecutive sentences for each count. This case represents one of the most egregious cases of child abuse in the history of Chester County. [Appellant] sexually abused four children under his care, including his biological children. The sexual abuse occurred over two decades in four different counties. In addition to the horrific sexual abuse, the victims also suffered through years of physical and emotional abuse.

Although the Court did not deviate from the Sentencing Guidelines, the Court still placed on the record its reasoning for sentence. Specifically, the Court noted the systematic pattern of abuse, the particularly despicable acts of forcing the children to engage in sexual activity with each other, and the involvement of two adult women in the sexual abuse of the victims. The Court also referenced the profound impact the abuse had on the

- 20 -

victim[s]. The victims all fought through the trauma and agony associated with [Appellant's] criminal conduct to testify at trial. The victims testified about the catastrophic impact the abuse had on their childhood and how they are still suffering as a result. The Court further noted the fact that [Appellant] is a clear danger to the community and his clear lack of remorse as well as his refusal to accept responsibility as a basis for its sentence.

After considering the seriousness of [Appellant's] activities and the sentencing guidelines, the aggregate sentence imposed in this matter was not only within the guidelines, but appropriate under the circumstances.

Trial Ct. Op. at 6.

We discern no abuse of discretion or error of law in the sentence imposed by the trial court. The crimes committed by Appellant were horrific. We are a society in which, every day, parents rejoice in the births of their children, work diligently to provide those children with care and well-being, and proceed in the tenacious hope that the youngsters committed to their care will grow to have lives that are better than the lives of those who preceded them. But this record reveals an Appellant who saw his children as mere fodder for a relentless barrage of sexual and violent abuse — a sickening "reign of terror"[8] — that continued for 23 years, and who accepted no responsibility when the time came to face his punishment. The trial court did not err in concluding that the criteria established by the Sentencing Code — "the protection of the public, the gravity of the offense as it relates to the

---

[8] Trial Ct. Op., 5/2/16, at 4.

impact on the life of the victim and on the community, and the rehabilitative needs of the defendant" — justified the substantial punishment it imposed.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/17/2017