J-S30018-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LUIS V. MARTINEZ-COLOMBA, JR. | : | |
| | : | |
| Appellant | : | No. 1506 MDA 2020 |

Appeal from the Judgment of Sentence Entered June 30, 2020
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0005668-2018

BEFORE:   BENDER, P.J.E., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.:              **FILED: JANUARY 28, 2022**

Luis V. Martinez-Colomba, Jr. (Appellant) appeals from the judgment of sentence entered in the Lancaster County Court of Common Pleas, following his jury convictions of, *inter alia,* aggravated assault and involuntary deviate sexual intercourse (IDSI),[1] committed against his ex-girlfriend H.F. (Victim), and her two-year-old son.  On appeal, Appellant argues the trial court erred when it permitted the Commonwealth to introduce evidence of Appellant's prior abuse of Victim.  For the reasons below, we affirm.

The facts underlying Appellant's convictions, as presented during his jury trial, are as follows.  Victim and Appellant began dating in April 2017, when Victim was approximately 19 years old and had a one-year-old son.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S. §§ 2702(a)(8), 3123(a)(1).

N.T., 1/7/20, at 92-93, 105.[2]  Just before midnight on August 21, 2018, Victim and Appellant were waiting in her car for Appellant's friend to jump start the battery.  N.T., 1/7/20, at 105-06.  Victim's two-year-old was asleep in the backseat.  *Id.* at 106.  The couple had been arguing, and after her car was started, Victim asked Appellant if she could go home because she had a headache.  *Id.* at 106-07.  Although he had started to fall asleep, Appellant "sat up and . . . said you are not going to suck or fuck me before you leave?"  *Id.* at 107.  He then instructed her to pull the car over and punched her "[t]en to fifteen" times across her "right arm, [her] chest, and . . . [her] back[.]"  *Id.* at 107-08.  Victim screamed for him to stop, but he refused, stating she deserved it.  *Id.* at 108.  Appellant directed her to drive to an ex-boyfriend's house so she could "suck [Appellant's] dick the way [she] sucked [her] ex's dick."  *Id.*  He threatened to snap her neck and kill her if she did not comply.  *Id.*

Victim parked on the street, and Appellant "pushed her head down to perform oral sex on him."  N.T., 1/7/20, at 109-10.  She was "crying, panicking, screaming from being beat," and could not breathe to such an extent that she threw up in the car.  *Id.* at 111.  Appellant however "pushed [her] back down" and forced her to continue until he ejaculated.  *Id.* at 112.  Appellant then told her she could go home.  *Id.* at 113.  Victim dropped Appellant at his house, at which time he apologized.  *Id.*

---

[2] Victim testified that at the time of trial in January of 2020, she was 22 years old and her son was four years old.  N.T., 1/7/20, at 92, 105.

- 2 -

Victim arrived home at approximately 4:00 a.m. and slept for about four hours before Appellant began "calling [her] and asking [her] where [she] was." N.T., 1/7/20, at 114. He apologized again and told her he was "going to change." *Id.* Victim returned to Appellant's house at approximately 11:30 a.m. *Id.* Appellant was "calm" and told her he "knew what he had done to [her]." *Id.* at 115.

However, around 3:00 p.m., Appellant's "mood changed" and he ignited an argument. N.T., 1/7/20, at 115. To diffuse the situation, Victim told Appellant she was going to take her son for a walk. *Id.* When her son "yelled bye to him," Appellant "grabbed [the child] out [of] the stroller, threw him in the car seat, smacked him, open hand, in the face, causing his lip to bleed and told [Victim] to go walk by [herself]."[3] *Id.* at 115-16. Appellant then sped around the block twice with Victim's son in the car. *Id.* at 117. Victim, communicating with Appellant through Facebook messenger, asked him if he would take her to her grandparents' house to get clothes to sell. *Id.*

Eventually, Appellant agreed to drive Victim to her grandparents' home. N.T., 1/7/20, at 117. While doing so, however, he grabbed her by the neck and pushed her towards the gear shifter, while threatening her. *Id.* at 118. When they arrived at the house, Appellant told her "not to pull any funny shit[]" or he would "kill us all in the car." *Id.* He even forced her to video

_____

[3] At trial, Victim testified this was not the first time Appellant hit her son. *See* N.T., 1/7/20, at 116.

chat him while she collected her clothes from the house. *Id.* at 119. However, Victim was able to signal her aunt to alert the police. *Id.* at 119-20.

Appellant was subsequently charged with simple assault, aggravated assault, terroristic threats, IDSI, and endangering the welfare of children.[4] On December 30, 2019, the Commonwealth filed a notice of intent to introduce evidence of Appellant's prior bad acts against Victim pursuant Pa.R.E. 404(b). Commonwealth's Notice of Intent, 12/30/19. Specifically, the Commonwealth asserted the evidence was "necessary to show the complete story rationale regarding their abusive relationship [and] to show a common[] scheme and plan." *Id.* at 3 (unpaginated). A jury trial commenced on January 6, 2020. Following *voir dire*, Appellant objected to introduction of evidence concerning his prior bad acts. After brief argument, the trial court overruled the objection. *See* N.T., 1/6/20, at 50-51.

At trial, Victim testified that her relationship with Appellant started to become violent in May or June of 2018. N.T., 1/7/20, at 93. She explained he would "[c]hoke me, push me, punch me, slap me, yell at me, scream at me, [and] threaten me." *Id.* at 94. Victim stated that, throughout their relationship, their conversations would "go from lovey dovey to aggression to telling him to stop hurting me." *Id.* at 98. She described how abuse became a normal occurrence in their relationship:

> It would be fighting and then lots of apologies, promises, and then changing and he would be there for me, love me, changing, not

_____

[4] *See* 18 Pa.C.S. §§ 2701(a)(1), 2706(a)(1), 4304(a)(1).

to do it again, and then [he would] go to . . . screaming and threatening again and then more promises, more lovey dovey conversations.

*Id.* Nevertheless, Victim remained with Appellant because she "always had hope that he wouldn't keep hitting [her or] threatening [her]." *Id.* at 99.

Victim also described one specific instance of abuse that occurred on July 24, 2018. N.T., 1/7/20, at 103-04. Appellant slept in his car outside of Victim's home the night before and was angry she had taken her cell phone in the house with her. *Id.* at 104. She testified that when she was leaving for work the next morning:

> [Appellant] started screaming at me, how I don't trust him. And he had a cup of pee in a coffee cup in the car and he was asking me if I trust him. I was ignoring him. And he kept asking me and I'm silent and . . . was like trying to answer and he dumped pee on me.

*Id*.

On January 9, 2020, the jury found Appellant guilty of all charges. Due to the COVID-19 pandemic, sentencing was delayed until June 30, 2020. The trial court sentenced Appellant to an aggregate term of 7 1/2 to 20 years' imprisonment.[5] Sentencing Order, 6/30/20, at 1-3. On July 10, 2020,

---

[5] As a result of his conviction of IDSI, Appellant was also required to register as a Tier III sex offender for his lifetime pursuant to Pennsylvania's Sexual Offender Registration and Notification Act (SORNA). *See* 42 Pa.C.S. §§ 9799.14(d)(4) (IDSI is Tier III sexual offense); 9799.15(a)(3) (Tier III offenders register for lifetime).

Appellant timely filed a post-sentence motion, which the trial court denied on November 3, 2020. This timely appeal follows.[6]

Appellant raises one issue on appeal:

> Whether the honorable trial court abused its discretion by permitting the Commonwealth to introduce prior bad act evidence . . . at trial such that Appellant should be granted a new trial?

Appellant's Brief at 6.

Our standard of review for challenges to the admissibility of evidence is well settled:

> Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

***Commonwealth v. Tyson***, 119 A.3d 353, 357-58 (Pa. Super. 2015) (*en banc*) (citations and punctuation omitted). Thus, a trial court's decision to admit prior bad acts evidence under the Pennsylvania Rules of Evidence will only be overturned upon a showing of an abuse of discretion. ***Commonwealth v. Chmiel***, 889 A.2d 501, 534 (Pa. 2005).

_____

[6] While Appellant erroneously purports to appeal from the November 3, 2020, order denying his post-sentence motion, the appeal in a criminal case "properly lies from the judgment of sentence made final by the denial of post-sentence motions." ***Commonwealth v. Shamberger,*** 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*). Thus, our Prothonotary has corrected the caption accordingly.

Pennsylvania Rule of Evidence 404(b) prohibits the introduction of evidence concerning a defendant's prior bad acts "to prove a [defendant's] character in order to show that on a particular occasion the [defendant] acted in accordance with the character." Pa.R.E. 404(b)(1). However, subsection (b)(2) of the Rule provides that prior bad acts evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2).

Another recognized exception under Rule 404(b)(2) is the "complete story" doctrine. Pursuant to this exception, relevant evidence of other offenses may be admitted to explain the context or the complete story of the events surrounding the crime in question. **See Commonwealth v. Crispell**, 193 A.3d 919, 936 (Pa. 2018); **see also Commonwealth v. Powell**, 956 A.2d 406, 419 (Pa. 2008) (prior bad acts evidence may be admitted "where the acts were part of a chain or sequence of events that formed the history of the case and were part of its natural development"). However, Rule 404(b)(2) specifies that such evidence "is admissible **only if the probative value of the evidence outweighs its potential for unfair prejudice**." Pa.R.E. 404(b)(2) (emphasis added). **See Commonwealth v. Brown**, 52 A.3d 320, 326 (Pa. Super. 2012) ("Where the *res gestae* exception is applicable, the trial court must balance the probative value of such evidence against its prejudicial impact.") (citation omitted). Trial courts are not obliged to sanitize a trial by eliminating all unpleasant facts from the jury's consideration when those facts

are both relevant and form part of the history and natural development of the events for which the defendant is charged. **Commonwealth v. Page**, 965 A.2d 1212, 1220 (Pa. Super. 2009).

Here, the trial court admitted the evidence under the "complete story" doctrine. **See** Trial Ct. Op., 11/3/20, at 3. Specifically, the court found "the prior bad act evidence . . . was relevant to help explain to the jury the relationship of [Appellant] and [V]ictim [, and] to explain why [V]ictim was afraid of [Appellant], continued to stay with him and delayed the reporting." **Id.** at 4. Moreover, the trial court concluded Appellant was not "unduly prejudiced" by the evidence and emphasized that it properly instructed the jury of the limited purpose for which it could consider the evidence. **Id.**

On appeal, Appellant concedes that the evidence of his prior abuse of Victim satisfies at least one of the Rule 404(b)(2) admissibility exceptions. Appellant's Brief at 13. However, he argues that admission of the challenged evidence unduly prejudiced him; he maintains the Commonwealth used the evidence "to paint him as an abuser." **Id.** at 13, 15. Appellant insists the trial court erred when it did not properly weigh the probative value of the evidence against its prejudicial impact under factors set forth in **Commonwealth v. Frank**, 577 A.2d 609 (Pa. Super. 1990). **Id.** at 13-14. **See Frank**, 577 A.2d at 614 (when assessing probative value of prior bad acts evidence, trial court should consider "the degree of similarity . . . between the incidents of criminal conduct, the Commonwealth's need [for the] evidence . . ., and the ability of

the trial court to caution the jury concerning the proper use of such evidence by them in their deliberations").

Appellant argues the prosecution had no need for the challenged evidence because the Commonwealth was able to establish the history of his relationship with Victim "through multiple text messages between them as well as [V]ictim's own testimony." Appellant's Brief at 16. Moreover, he maintains the evidence was not necessary to explain a delay in reporting because there was, in fact, no delay — "law enforcement was notified literally as it was happening and [V]ictim gave a statement to police the day after." *Id.* at 15. Appellant also argues the prior bad acts evidence was weak since it was supported only by Victim's own testimony, which he characterized as "vague." *Id.* at 17-18. Therefore, Appellant contends the trial court abused its discretion when it permitted the Commonwealth to introduce the prior bad acts evidence, and he is entitled to a new trial.

Upon our review of the record, we detect no abuse of discretion on the part of the trial court. As noted **supra**, the trial court found the evidence was admissible under the complete story doctrine. Appellant does not dispute this finding on appeal. Appellant's Brief at 13. Indeed, the courts of this Commonwealth have consistently held that evidence of a defendant's prior abuse of a victim is admissible under the complete story doctrine. **See Commonwealth v. Powell**, 956 A.2d 406, 420 (Pa. 2008) (testimony describing a prior incident when defendant threw a glass in the victim's face was relevant to show a pattern of abuse, as well as the nature of the

defendant's relationship with the victim.); ***Commonwealth v. Dillon***, 925 A.2d 131, 139 (Pa. 2007) (evidence that defendant had physically abused the victim's family was admissible to explain the victim's delay in reporting her own sexual abuse by the defendant, and explain the events surrounding the sexual assault at issue); ***Commonwealth v. Jackson***, 900 A.2d 936, 940-41 (Pa. Super. 2006) (evidence showing the escalation of defendant's physical and sexual abuse of the victim, which led to her murder, was admissible to show the history of the case and demonstrate the defendant's motive, malice, intent, and ill-will towards the victim.).

On appeal, Appellant insists the prejudicial impact of the evidence outweighed its probative value, focusing, in particular, on the factors set forth in ***Frank***. In applying the ***Frank*** test to determine if prior bad act evidence is unduly prejudicial, this Court has focused on the following factors:

> the strength of the "other crimes" evidence, the similarities between crimes, the time lapse between crimes, the need for the other crimes evidence, the efficacy of alternative proof of the charged crime, and the "degree to which the evidence probably will rouse the jury to overmastering hostility."

***Brown***, 52 A.3d at 326 (citations omitted). Moreover, we should also be cognizant of whether the trial court was able to provide the jury with an appropriate limiting instruction. *See **Frank***, 577 A.2d at 614.

Here, an application of the ***Frank*** factors does not yield a finding of undue prejudice. Regarding Appellant's claim that the Commonwealth did not need the evidence to prove its case, we agree with the trial court that Victim's testimony concerning the prior abuse was relevant to explain her delay in

reporting the prior incidents to authorities. *See* Trial Ct. Op. at 4. Although Appellant asserts that there was no delay between the abuse and reporting, we note that Victim did not report the sexual assault that occurred during the early morning of August 22. *See* Appellant's Brief at 15. Rather, she returned to Appellant's home the next day and did not alert the police until after Appellant physically assaulted her son. *See* N.T., 1/7/20, at 115-20. We have previously held that the prosecution has a valid need to introduce prior bad acts evidence to help explain why a domestic sexual abuse victim may delay reporting the abuse to authorities. *Dillon*, 925 A.2d at 139.

Appellant also asserts that the Commonwealth did not need Victim's testimony concerning Appellant's prior abuse because it introduced multiple text message conversations between Victim and himself, which, Appellant asserts, sufficiently contextualized his relationship history with Victim. Appellant's Brief at 16-17. However, Appellant does not explain why or how Victim's testimony is unnecessary in light of these messages. Rather, the opposite is true; Victim's prior bad acts testimony was necessary to authenticate and explain the text message evidence to the jury. Moreover, we note Victim's testimony regarding Appellant's prior abused comprised only six pages of her 74-page testimony. N.T., 1/7/20, at 98-104. We disagree with Appellant that this brief portion of testimony evinced such an overmastering emotional response in the jury that it would have been immune to containment by a jury instruction.

Finally, Appellant fails to acknowledge that the trial court provided the jury with a thorough and appropriate limiting instruction concerning how it was to consider the evidence of Appellant's prior bad acts. The court charged the jury:

> You have heard evidence tending to prove that [Appellant] was guilty of improper conduct for which he is not on trial. I am speaking of testimony to the effect that the defendant engaged in domestic violence against [Victim] prior to the event of August 22, 2018, which is the event at issue here.
>
> This evidence is before you for a limited purposed of tending to show the history of events between [Appellant] and [Victim] leading up to August 22, 2018. This evidence must not be considered by you in any way other than for [the] purpose I just stated. You must not regard this evidence as showing that the defendant is a person of bad character or criminal tendencies from which you might be inclined to infer guilt.

N.T., 1/9/2020, at 386-87. It is well-settled that "when examining the potential for undue prejudice, a cautionary jury instruction may ameliorate the prejudicial effect of the proffered evidence[, and j]urors are presumed to follow the trial court's instructions." *Commonwealth v. Hairston*, 84 A.3d 657, 666 (Pa. 2014) (citations omitted). Appellant fails to explain why that presumption should not apply here.

Thus, we conclude Appellant has failed to demonstrate that the trial court's admission of Victim's testimony concerning Appellant's prior abuse constituted an abuse of discretion. *See Tyson*, 119 A.3d at 357. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/28/2022</u>