J-A06033-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL R. MERRINGER, SR. | : | |
| | : | |
| Appellant | : | No. 434 WDA 2025 |

Appeal from the Judgment of Sentence Entered January 6, 2025
In the Court of Common Pleas of Somerset County Criminal Division at
No(s):  CP-56-CR-0000417-2019

BEFORE:  OLSON, J., MURRAY, J., and BECK, J.

MEMORANDUM BY BECK, J.:                         **FILED: May 22, 2026**

Michael R. Merringer, Sr. ("Merringer") appeals from the judgment of sentence entered by the Somerset County Court of Common Pleas after a jury convicted him following his second trial of thirty-three sexual offenses involving minors.  On appeal, he challenges the trial court's decisions to allow his victims to testify regarding why they waited several years to report his abuse and to permit the Commonwealth to reference a fact that was not in evidence during its closing argument.  Because we conclude that the trial court did not abuse its discretion in admitting the challenged testimony and that any error the trial court made with respect to the Commonwealth's closing argument was harmless, we affirm.

On April 15, 2019, Corporal Shawn Reynolds of the Pennsylvania State Police filed a criminal complaint against Merringer charging him with numerous

sexual offenses against two of his children, A.D. and N.M., that occurred from 1996 and 2012 when they were both minors. Merringer's oldest child, M.M., did not raise any allegations of sexual abuse against his father.

At Merringer's first trial, the Commonwealth called Corporal Reynolds to testify about his investigation of the case, which included a three-hour recorded video interview of Merringer. During his testimony, the Commonwealth played excerpts of the interview for the jury and the corporal commented on various points during the interview where he believed, based on his training and experience, Merringer was displaying signs of deception.

On March 4, 2022, following a five-day trial, the jury found Merringer guilty of all thirty-three charges. On June 8, 2022, the trial court sentenced Merringer to an aggregate term of twenty-five to fifty years in prison. Merringer timely appealed to this Court.

On appeal, this Court vacated Merringer's judgment of sentence and awarded him a new trial. *See Commonwealth v. Merringer*, 1457 WDA 2022, 2023 WL 7292982, at *9 (Pa. Super. 2023) (non-precedential decision). We determined that Corporal Reynolds had offered expert testimony on the meaning underlying "Merringer's words and behavior during his interview and that his testimony went beyond merely describing his own personal observations." *Id.* at *8. We reasoned that because Corporal Reynolds "relied on his training and experience as an officer and exceeded the knowledge base of an average lay juror" and concluded, "[c]onsidering Corporal Reynolds'

- 2 -

background and specialized knowledge, his descriptions of Merringer's words and behavior should have been subject to his qualification as an expert witness." **Id.** We therefore held that "[b]ecause Corporal Reynolds was not qualified as an expert at trial, it was error to allow such testimony" and that such error was not harmless. **Id.** at *8-9.

Merringer's second trial commenced in late September 2024. On October 4, 2024, following another five-day trial, a jury again found Merringer guilty of all thirty-three charges. On January 6, 2025, the trial court once again sentenced Merringer to an aggregate term of twenty-five to fifty years in prison. Merringer filed timely post-sentence motions, which the trial court subsequently denied. This timely appeal followed. Merringer presents the following issues for review:

1. Was it error to deny [Merringer]'s motion for new trial based upon the Commonwealth's use of irrelevant, prejudicial testimony concerning the alleged victims' motivation for testifying and damaged familial relationships, as asserted during trial and in the post-sentence motion?

2. Was it error to deny [Merringer]'s motion for new trial based on the Commonwealth's use of facts in closing argument that were not brought into evidence at trial, over objection, specifically concerning a supposed phone call between the alleged victims' mother and aunt, as asserted in the post-sentence motion?

3. Did cumulative error accrue in this matter to [Merringer]'s prejudice?

Merringer's Brief at 2-3.

In his first issue, Merringer argues that the trial court erred in permitting A.D. and N.M. to testify regarding why they delayed reporting their father's abuse. *See id.* at 10-24. A.D. and N.M. both testified that they did not come forward until several years after they endured sexual abuse by their father because (1) their older brother, M.M., had a baby and they were worried that Merringer would harm him and (2) they were previously concerned they would damage their relationships with other family members. *Id.* at 11-19. Merringer contends this testimony was irrelevant to explain A.D.'s and N.M.'s delayed reporting; to the extent this testimony may have been relevant, he asserts it was unfairly prejudicial, as the portions of A.D.'s and N.M.'s testimony regarding their concern for their nephew improperly associated Merringer with another crime. *Id.* at 19-22. Merringer argues that the testimony explaining their decision to come forward years after the abuse served no purpose other than to "inculcate sympathy" and encourage the jury to protect their nephew by convicting Merringer. *Id.* at 22-23.

We begin with the well-settled standard of review:

> [T]he admissibility of evidence is a matter within the sound discretion of the trial court and will be reversed only where there is a clear abuse of discretion. Our standard of review of a challenge to an evidentiary ruling is therefore limited. Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Wilson*, 273 A.3d 13, 19 (Pa. Super. 2022) (citation omitted).

- 4 -

"The threshold inquiry with admission of evidence is whether the evidence is relevant." **Commonwealth v. Yale**, 249 A.3d 1001, 1022 (Pa. 2021) (citation omitted). "Evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence." **Id.** at 1022 (citing Pa.R.E. 401(a), (b)). "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. Even if relevant, however, evidence may be excluded "if its probative value is outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

In rejecting this claim, the trial court explained as follows:

> [Merringer,] in his opening statement[,] made delayed reporting an issue of the victims' credibility. In response, the Commonwealth was entitled to provide an explanation for the delayed reporting to rebut an inference of unreliability.
>
> Any risk the jury would use the evidence for an improper purpose was ameliorated by the court giving two cautionary instructions. When weighing the potential for prejudice, a trial court may consider how a cautionary jury instruction might ameliorate the prejudicial effect of the proffered evidence. …
>
> In summary, this case hinged entirely on the credibility of the victims, and so the Commonwealth was entitled to give an explanation for the delayed report. Any improper purpose for which the jury might use the testimony was fully addressed in the curative instructions, twice given by the court.

Trial Court Opinion, 3/7/2025, at 12 (record citations omitted).

The record reflects that during his opening statement, Merringer's counsel challenged the credibility of A.D.'s and N.M.'s allegations against their

- 5 -

father because they claimed he committed the acts against them many years ago. N.T., 10/1/2024, at 2.61-2.63. When the prosecutor first asked A.D. why she decided to finally report her father's abuse in 2019, she explained that her oldest brother had just had a baby in September 2018 and she believed that she needed to do something to protect the baby from Merringer. *Id.* at 2.203-2.204. Merringer did not object to this testimony at this time. *See id.* Shortly thereafter, when the prosecutor asked A.D. to again explain why it took her so long to come forward, she stated "I just don't want -- I don't want him to hurt anyone else." *Id.* at 2.208. It was at this point that Merringer objected. *Id.* at 2.208-2.209. When the prosecutor subsequently asked A.D. questions about the strain her decision to report her father's abuse put on her relationship with other family members, Merringer objected and the trial court sustained these objections. *Id.* at 2.209-2.210.

The following morning, regarding A.D.'s testimony relating to her delayed reporting of Merringer's abuse and its connection to the birth of her nephew, the trial court provided the jury with the following instruction:

> There's one other thing I wanted to bring up to you at the end of the day yesterday: There was an objection relative to a question that was raised relative to [A.D.]'s motivation for the late report. I felt that that was relevant, and I allowed her to have that testimony, but I want to give you a cautionary instruction now.

> It is not your role to make any determination as to future consequences or potential issues. Your issue is only the issues that gave rise to the criminal charges that are brought before us today. You are to give no consideration to future concerns, and

that was relevant only as to the question of the late report, which is a relevant issue in this case.

So, again, give no consideration to future potential consequences or the assumption that something may occur in the future.

N.T., 10/2/2024, at 3.213-3.214.

The record further reflects that when the prosecutor asked N.M. why he decided to report his father's abuse in 2019, he similarly explained that he learned that his older brother was going to have a baby and he was concerned for the baby's safety. *Id.* at 3.317-3.319. Upon Merringer's objection, the trial court reminded the jury of the cautionary instruction that it gave earlier that day. *Id.* at 3.318. The prosecutor subsequently asked N.M if this case "has torn your family apart", to which N.M. responded "Yes," and when the prosecutor asked how that made N.M. feel, Merringer objected and the trial court sustained the objection. *Id.* at 3.323. When the prosecutor once again asked N.M. why he waited so long to come forward and N.M. began talking about his concern for his nephew, Merringer's counsel requested a sidebar during which he requested a mistrial. *Id.* at 3.323-3.324. While the trial court denied the mistrial, it did provide the jury with the following instruction:

Ladies and gentlemen, this is a similar issue that I've spoken about this morning, the issue of the reporting. I think the question and answer is relevant. It is not relevant at all relative to future conduct, if at all, so you are not to consider any aspect of any future conduct. Your role is to only listen to the issues as to whether the events that are giving rise to the charges actually occurred or not. Give no consideration to any future conduct.

*Id.* at 3.324-3.325.

Thus, the record reveals that the defense strategy relied, at least in part, on challenging the credibility of A.D. and N.M. for failing to report their father's abuse of them for many years. Our Supreme Court has explained that "both the common law experience and the judgment of the General Assembly have led to a recognition of the relevance of the promptness of a complaint of sexual abuse, and this Court has separately recognized the reality that a sexual assault prosecution oftentimes depends predominately on the victim's credibility, which is obviously affected by any delay in reporting the abuse. *Commonwealth v. Dillon*, 925 A.2d 131, 138-39 (Pa. 2007). The Court further emphasized, however, that "[r]evealing the circumstances surrounding an incident of sexual abuse, and the reasons for the delay, enables the factfinder to more accurately assess the victim's credibility. *Id.* Thus, while it was a legitimate strategy for Merringer to attack A.D.'s and N.M.'s credibility based on their delayed reporting of his abuse, the Commonwealth was likewise entitled to present evidence explaining the delay and A.D.'s and N.M.'s testimony in this respect was plainly relevant. *See id.*

We note that when the jury first heard A.D. testify that the reason she finally came forward with the allegations against her father was her concern for the safety of her nephew, Merringer did not object. *See* N.T., 10/1/2024, at 2.203-2.204. When Merringer eventually objected to both A.D.'s and N.M.'s testimony regarding their nephew, the trial court issued two cautionary instructions informing the jury that they were only to consider that testimony

as an explanation for the delayed reporting and not as speculation regarding Merringer's potential future conduct. *See* N.T., 10/2/2024, at 3.213-3.214, 3.324-3.325. While Merringer asserts that the Commonwealth was wrongly attempting to connect him to a different crime that had not yet occurred, *see* Merringer's Brief at 21-22, this claim is belied by the record. The record instead reflects that the Commonwealth offered this testimony solely to explain the delayed reporting; to the extent the complained-of testimony went beyond that purpose, the trial court's cautionary instructions alleviated any such concern. *See Commonwealth v. Reid*, 259 A.3d 395, 429 (Pa. 2021) ("we must presume that the jury followed the trial court's instructions"). Finally, as to Merringer's complaint about testimony regarding the strain A.D.'s and N.M.'s disclosures put on their family relationship, the trial court sustained Merringer's objections to the Commonwealth's questions on this topic and the jury did not hear any testimony to this effect. *See* N.T., 10/1/2024, at 2.209-2.210; N.T., 10/2/2024, at 3.323.

Based on the foregoing, the Commonwealth's questions to A.D. and N.M. about the reasons underlying their decision to report their father's abuse many years after it occurred was in fair response to Merringer's defense strategy. Through its cautionary instructions and handling of objections, the trial court appropriately limited the jury's consideration of the testimony to their credibility in light of their delayed report. We therefore conclude that

the trial court did not abuse its discretion in permitting their testimony regarding their delayed reporting of Merringer's abuse.

In his second issue, Merringer argues that the trial court erred in overruling his objection to the Commonwealth's reference during its closing argument to "the [hotdog] story" and the alleged related phone call between his wife, Amy Merringer ("Amy"), and her sister, Karen Lampke ("Lampke"). *See* Merringer's Brief at 24-28. He asserts that because Amy did not recall that a phone call with Lampke regarding the hotdog story occurred, and Lampke did not testify at trial, the phone call was not evidence at trial and the prosecutor should not have been allowed to reference the phone call during closing. ***See id.***

At trial, A.D. testified that when she was a child, she asked her cousin while they were playing together, "Does your dad ever make you lick his hotdog?" N.T., 10/1/2024, at 2.121-2.122 (cleaned up). A.D. testified that her mother overheard the statement and came into the room, yelled at A.D., and told her that she "shouldn't say stuff like that, that it was disgusting; people get in trouble for stuff like that." ***Id.*** at 2.122. When the prosecutor asked Amy, who testified at trial on behalf of Merringer, about the hotdog story on cross-examination, she stated that she did not recall A.D. ever making that statement. N.T., 10/3/2024, at 4.613-4.614. When the prosecutor asked Amy whether she discussed the hotdog story with Lampke during a phone call, she testified that she did not recall doing so. ***Id.*** at 4.614.

When the prosecutor asked her if she knew that Lampke had told Corporal Reynolds that Amy had told her about the hotdog story on a phone call, she answered "No." *Id.*

During its closing, the Commonwealth made brief mention to the alleged phone call about the hotdog story:

> [The Commonwealth]: [A.D.] sort of subconsciously when she was a little girl with the hotdog story. [Amy] doesn't remember that. She doesn't remember a phone call with her sister, [Lampke], about it. She doesn't even remember -- or doesn't even know if her sister … told the State Police that something did happen, that [Amy] called her that day. She doesn't remember any of that.
>
> [Merringer's Counsel]: Your Honor, that never came into evidence.
>
> [The Commonwealth]: Yes, it did.
>
> THE COURT: Objection is overruled.

N.T., 10/4/2024, at 5.742 (cleaned up).

In its opinion denying Merringer's post-sentence motions, the trial court conceded that it should not have permitted the prosecutor to reference the alleged exchange between Amy and Lampke during closing arguments and that it erred in overruling Merringer's objection, but that the error was nonetheless harmless. Trial Court Opinion, 3/7/2025, at 15. The court explained:

> The alleged statement of [Lampke] to the trooper goes to a fairly collateral issue—whether or not [Amy] is credible in her testimony that she was not aware of the abuse. It in no way addresses [Merringer]'s ultimate guilt or innocence. The Commonwealth's closing argument reference to [Lampke]'s alleged statement was very brief and combined with a reference to the "hotdog story" that was fair game for the Commonwealth.

- 11 -

*Id.* (cleaned up). The Commonwealth likewise concedes that the trial court erred but agrees that the error was harmless. Commonwealth's Brief at 14.

Our review of the record confirms that the trial court erred in its finding that evidence was admitted that a phone call occurred between Amy and Lampke regarding the hotdog story and overruling Merringer's objection on that basis. Nonetheless, we agree with the trial court's conclusion that this error was harmless.

"An error is harmless if it could not have contributed to the verdict, or stated conversely, an error cannot be harmless if there is a reasonable possibility the error might have contributed to the conviction." *Commonwealth v. Poplawski*, 130 A.3d 697, 716 (Pa. 2015). Harmless error occurs where:

> (1) the error did not prejudice the defendant or the prejudice was de minimis;
>
> (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or
>
> (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Id.* (citation omitted).

The record reflects that the jury heard the hotdog story directly from A.D. and that Merringer did not object to this testimony. *See* N.T., 10/1/2024, at 2.121-2.122. While the credibility of A.D. was undoubtedly a significant

factor in the jury's verdict, whether Amy could recall a phone call with Lampke regarding the hotdog story likely was not. As the Commonwealth stated, "[i]t would defy all logic to conclude that the jury convicted [Merringer] based solely or even in large part upon a phone call between [Amy] and her sister that may or may not have happened." Commonwealth's Brief at 14. Both A.D. and N.M. testified at length and in detail regarding the abuse they sustained at the hands of their father, and the jury therefore had ample opportunity to assess their credibility. *See* N.T., 10/1/2024, 2.100-2.143, N.T., 10/2/2024, at 3.258-3.290. Furthermore, the trial court instructed the jury that the attorneys' arguments were not evidence and that their "determination of the facts should not be based on … which of the attorneys made the better speech or arguments nor on which attorney you like best." N.T., 10/4/2024, at 5.752-5.753. Thus, to the extent that the prosecutors' reference to the alleged phone call between Amy and Lampke was improper, any such error was cured by the Court's instruction to the jury. *See Reid*, 259 A.3d at 429. Based on the foregoing, we agree with the trial court that its error in permitting the prosecutor to reference the alleged phone call between Amy and Lampke regarding the hotdog story was de minimis, and consequently, harmless. Merringer's second issue therefore does not entitle him to relief.

In this final issue, Merringer argues that the cumulative nature of the trial court's errors in his first and second issues warrants a new trial. As stated

above, however, we determined that the trial court did not err in its handling of testimony regarding the reason for the delayed reporting of Merringer's abuse. Similarly, although the trial court erred in permitting the prosecution to reference the alleged phone call between Amy and Lampke regarding the hotdog story during closing arguments, we concluded that any such error was harmless. One harmless error on the part of the trial court certainly does not entitle him to a new trial. Merringer's third and final issue therefore fails.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 5/22/2026